Chief Judge Fuld.
The defendant, indicted for robbery in the first degree, moved to dismiss his indictment on the ground that his right to a speedy trial had been denied. While that motion was pending, the district attorney offered to allow him to plead to robbery in the third degree (a class D felony; new Penal Law, § 160.05), but only on condition that his acceptance *395 take place before his motion was decided.[1] Complying with that condition, the defendant entered his plea to the lower crime. On this appeal, two questions are presented for our determination: (1) was the defendant deprived of his right to a speedy trial and (2) was his “ waiver ” of that right accomplished by coercion or duress. Both questions should be answered in the affirmative.
On July 22,1967, a robbery was committed in a Yonkers supermarket. On August 30, 1967, a felony information was filed in the Yonkers Court of Special Sessions, charging the defendant and two others with the robbery.[2] At about the same time the defendant, incarcerated in the Queens County House of Detention on other charges, was orally advised of such detainer; he never appeared in the Yonkers court. According to the district attorney, the Yonkers warrant was not lodged at the Queens jail until February 10, 1968. At all events, the defendant, while serving a prison term for other crimes, was indicted for the Yonkers holdup — on a charge of robbery in the first degree — on December 23, 1970. He was not brought to the Westchester County Court for arraignment until November 15, 1971. Counsel was assigned to represent the defendant and, on November 29, he brought an article 78 proceeding to dismiss the indictment for failure to afford his client a speedy trial. Defense counsel states that, although the Supreme Court justice, before whom the matter came, decided the petition £ £ on the merits ’ ’ against the defendant, he gave him no order from which he could appeal. On December 4, he was advised by the district attorney that the defendant would be brought to trial on December 15, 1971.
On December 7, the defendant moved, by motion returnable December 17, in the Westchester County Court to dismiss *396 the indictment on the ground that, by virtue of a delay of 51 months — the period between August, 1967 and November, 1971 — he had been denied his constitutional and statutory right to a speedy trial. On December 14, three days before the return day of the defendant’s motion, the district attorney, in an affidavit in opposition, asserted that, since the indictment, which he described as the only ‘ ‘ proper accusatory instrument ’ ’, was filed only 11 months before, there was no undue delay in the trial. He further declared that any lag resulted from the prosecution’s practice of treating “jail” and “bail” cases alike for “ purposes of trial priority ” and that the case was being reached for trial ‘ ‘ in the normal course of events.”[3]
On the same date, December 14, upon the district attorney’s application, the court agreed to mark the case ready for the following morning subject to its decision on the motion for a speedy trial. On the next day, however, the defendant changed his plea of not guilty to guilty to the reduced charge of robbery in the third degree. He admitted his guilt and, upon the prosecutor’s insistence, agreed to withdraw all previously made motions.
At the sentencing on January 20,1972, the defendant’s lawyer, after relating the facts described above, declared that the assistant district attorney, on December 14, had informed him that there was no decision on the speedy trial motion and that, “ if we didn’t take the deal now before that motion was decided * * * and if we didn’t withdraw our motions, there would be no deal ’ ’, and the defendant ‘ ‘ would be forced * * * to go to trial some fifty-one (51) months after the crime allegedly occurred”. The trial judge, stating that the motions “were withdrawn ’ ’, proceeded to pass sentence.
On appeal, the Appellate Division, one justice dissenting, affirmed on the ground that “ any right which defendant may have had with respect to a dismissal of the indictment on account of delay was expressly waived by him ” (40 A D 2d 540). In the view of the dissenting judge, ‘ ‘ the delay of over 51 months *397 between the filing of the felony information in the Yonkers City Court in August, 1967 and the return of [defendant] to the Westchester County Court for trial in November, 1971 was unreasonable as a matter of law and no good cause for the delay was established ”; he added that, although the right to a speedy trial could be waived if assent were freely and knowingly given, it appeared to him that the defendant ‘ ‘ was coerced into doing so by an unlawful exaction and by duress.”

Right to a Speedy Trial

A defendant’s right to a speedy trial, guaranteed both by Constitution (U. S. Const., 6th and 14th Amdts.; see Dickey v. Florida, 398 U. S. 30, 37-38; Smith v. Hooey, 393 U. S. 374, 383; Klopfer v. North Carolina, 386 U. S. 213, 226) and by statute (CPL 30.20; Civil Rights Law, § 12), is violated if there is an excessive delay between institution of the prosecution—whether by felony information or complaint, detainer warrant or indictment— and the trial. (See, e.g., United States v. Marion, 404 U. S. 307, 320; People v. Minicone, 28 N Y 2d 279, 281; People v. Winfrey, 20 N Y 2d 138, 143-144; People v. Prosser, 309 N. Y. 353, 361.)[4] People v. Winfrey (20 N Y 2d 138, supra) is, on this score, virtually identical with the present case. There the defendant was charged with the crime of forgery committed on or about April 8, 1958, and an information was sworn to in the District Court of Nassau County some three weeks later. In July of 1958, a detainer warrant was lodged with officials of an Alabama State prison where he was incarcerated on an unrelated matter. No effort was made to obtain his return to New York, and he was not indicted on the forgery charge until January of 1963. Brought back to this State in October of that year, he moved, in January, 1964, to dismiss the indictment for “ lack of prosecution ” (20 N Y 2d, at p. 139). In reversing the Appellate Division and upholding the trial judge’s grant of the motion, this court, in an opinion by Judge Bbeitel, declared (pp. 143-144): “ From a constitutional aspect, it appears that the four *398 and a half years’ delay in prosecuting defendant prior to his indictment, but after the initiation of criminal proceedings, deprived him of due process of law. Prior to the Klopfer decision ([Klopfer v. North Carolina, 386 U. S. 213] supra) it was established that a State denies a defendant due process of law if it unreasonably delays his prosecution, after the initiation of criminal proceedings * * * It may be that this doctrine has now been incorporated in the ‘ speedy trial ’ guarantee of the Sixth Amendment pursuant to the Klopfer rule; but it is only of limited analytical importance whether the right is one of a ‘ speedy trial ’ or of ‘ due process of law ’. In either event, this delay of four and a half years * * * is unreasonable, since no effort was made to secure defendant’s release or transfer.” It is for the prosecution, the court continued, to establish a reasonable basis for postponing the trial (20 N Y 2d, at p. 144):
“ Moreover, there is staleness in a nine-year-old charge of crime with all the consequences of difficulties of proof from the side of the defendant as well as the prosecution. To be sure, the People have the untrammeled power to institute a prosecution any time within the limitations period—at least five years in the case of this felony—but once having instituted the prosecution by detainer warrant, indictment or other initiatory process, they have the obligation of advancing it unless there is a reasonable ground for delay.” (Emphasis supplied.)[5]
Only the fact that the defendant in the Winfrey case was in an out-of-state prison distinguishes that case from the one now before us. On this appeal, the People do not even attempt *399 to excuse the four-year delay by claiming that they were unable to locate him. Having discovered him in the Queens jail where the warrant was lodged, the Westchester authorities had only to make a simple inquiry of the court in Queens County to ascertain his subsequent location and bring him to trial. Accordingly, there can be no question but that the defendant was denied the right to be speedily tried.

Waiver and Plea

A defendant may, of course, waive his right to a speedy trial (see, e.g., People v. Dwight S., 29 N Y 2d 172, 175; People v. Chirieleison, 3 N Y 2d 170, 173; Becker v. State of Nebraska, 435 F. 2d 157, 158, cert. den. 402 U. S. 981), but the waiver of a constitutional right, like any other, must be both 1 ‘ knowingly and voluntarily made.” (Barker v. Wingo, 407 U. S. 514, 529; see People v. Mulligan, 24 N Y 2d 948, 949; cf. Matter of Lawrence S., 29 N Y 2d 206, 209; Johnson v. Zerbst, 304 U. S. 458, 464-465; United States v. Marcello, 423 F. 2d 993, 1004-1005, cert. den. 398 U. S. 959.) Nor may his guilty plea be coerced, either by actual physical compulsion, threats and the like or ‘‘ by the duress of circumstances.” (People v. Flowers, 30 N Y 2d 315, 317; see, also, Santobello v. New York, 404 U. S. 257, 261; United States v. Jackson, 390 U. S. 570, 581-583; Alschuler, Plea Bargaining, 36 U. Chic. L. Rev. 50, 85 et seq.; cf. North Carolina v. Alford, 400 U. S. 25, 31; Brady v. United States, 397 U. S. 742, 748; Parker v. North Carolina, 397 U. S. 790, 801-802 [per Brennan J., concurring in result in Brady v. United States]; People v. Montgomery, 27 N Y 2d 601, 604.)
In the case before us, the element of coercion present not only in the defendant’s waiver of his right to a speedy trial but also in his plea of guilt to a lesser crime renders each defective and illegal. This is not a situation where the viability df a defendant’s claim of deprivation of a right to a speedy trial “was mistakenly assessed ’ ’ or- where he was ‘ ‘ erroneously advised ’ ’ by counsel. (McMann v. Richardson, 397 U. S. 759, 769.) Nor is it one where he had ‘ ‘ full opportunity to assess the advantages and disadvantages of a trial as compared with those attending a plea of guilty [with] no hazard of an impulsive arid improvident response to a seeming but unreal advantage.” (Brady v. United States, 397 U. S. 742, 754, supra.) Rather, it is a case *400 where the defendant had no time to apprehend the ‘‘ relevant circumstances and likely consequences ” of his waiver. (Brady v. United States, 397 U. S. 742, 748, supra; see, also, Matter of Lawrence S., 29 N Y 2d 206, 208, supra.)
The defendant, having been returned to Westóhester County Court for arraignment on November 15, 1971, and having been assigned counsel, pleaded not guilty and was given 30 days in which to file motions. His speedy trial motion — after the delay in asserting this claim, caused by the abortive article 78 proceeding—was returnable December 17, only two days after his case was set for trial. In addition to pushing forward the trial proceedings one day to December 14, the prosecutor at that point presented defense counsel with the offer of a lesser plea, contingent, however, upon immediate acceptance. Particularly highhanded was his limitation that the defendant’s decision be given before the outcome of the speedy trial motion or the [1] ‘ deal was off and this, after the trial judge had moved up the return date of the motion to December 15, the original date set for trial as well as the 30-day adjournment date.
The use of plea bargaining presupposes, in the words of the Supreme Court in Santobello v. New York (404 U. S. 257, 261, supra), “fairness in securing agreement between an accused and a prosecutor.” The prosecutor’s conduct might not, perhaps, have been so unfair had the circumstances beón altered: had the defendant’s rights not been so egregiously violated and had he — and his counsel—been given ample opportunity to weigh the relative merits of the plea offered against the hazards of a trial. However, the district attorney’s maneuvering may only be characterized as unfair and over-reaching. Even after taking into consideration the inescapable element of coerciveness inherent in all plea bargaining, it must be concluded that the defendant’s plea was arrived at as a result of “ undue pressure ”. (People v. Montgomery, 27 N Y 2d 601, 604, supra.) In the words of Judge Breitel in the Flowers case (30 N Y 2d 315, 319, supra), the “ State is not so short of grist for its criminal mill that it must absorb convictions obtained in the * * * circumstances present here.”
Since the defendant was, as a matter of law, clearly denied a right to a speedy trial (see, e.g., People v. Wallace, 26 N Y 2d 371, 374; People v. Simmons, 40 A D 2d 563 [supra, p. 395, *401 n. 2]), he is entitled to reversal of his conviction and dismissal of the indictment.
The order appealed from should be reversed and the indictment dismissed.
Judges Burke, Breitel, Jasen, Gabrielli, Jones and Wachtler concur.
Order reversed, etc.

. The defendant was asked both to “ withdraw all previously made motions ” and “to waive his right to appeal”. The trial judge did not approve this second waiver and advised the defendant of his right of appeal.

. One codefendant — Robert Simmons-—was tried separately, convicted and appealed. The Appellate Division reversed his conviction and dismissed the indictment, declaring that the “ delay of almost four years between August, 1967, when felony informations were filed in the [Yonkers court] apd July, 1971, when appellant was returned from Clinton Prison * * * for trial, was unreasonable as a matter of law and no good cause for delay was established”. (People v. Simmons, 40 A D 2d 563.) The other codefendant apparently pled guilty to a reduced charge.

. The district attorney also claimed that the defendant’s whereabouts were unknown and not discovered until the defendant was “ultimately traced” to Greenhaven Prison where he was incarcerated for other crimes. The Yonkers authorities, however, had been advised, at least by February 20, 1968, that the defendant was then in the Queens House of Detention.

. A defendant — at least while without counsel — does not have the burden of seeing to it that he is speedily brought to trial. “ [T]he mere failure of the defendant to take affirmative action to prevent delay may not, without more, be construed or treated as a waiver.” (People v. Prosser, 309 N. Y. 353, 358, supra; cf. Barker v. Wingo, 407 U. S. 514, 528.)

. In the ease before us, it is of little moment whether initiation of the prosecution be deemed to have begun when the information was sworn—in August, 1967, one month after commission of the crime — or February 10, 1968, when the detainer warrant was lodged with the Queens House of Detention. The lapse of just over four years rather than four and a half years before the December, 1971,- trial proceedings, still involves an indisputably excessive delay. In any event, under the new Criminal Procedure Law, there can no longer be any doubt—if ever there was — that the “ filing of the felony complaint in the lower court * * * commences the action ” (Denzer, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 11A, CPL, p. 364: see, also, CPL 1.20, subd. 17; 100.05).