■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PINKNEY PEARSON, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered August 12, 1975, convicting him of robbery in the second degree, upon his plea of guilty, and imposing sentence. Judgment affirmed. Defendant was indicted on November 26, 1974 and charged with eight counts of robbery in the first degree and one count of criminal possession of a weapon in the second degree and was arraigned on these charges on December 9, 1974. Several adjournments followed and, on March 12, 1975, at defendant's request, his assigned 18-B attorney (see County Law, art 18-B), Mr. Litwak, was relieved. The case was adjourned on defendant's promise that he would retain private counsel. On or about March 21, 1975 defendant's demand for another adjournment for the same purpose was granted, but the court at that time appointed Mr. Brett, another 18-B attorney, to represent defendant in the interim. Between March 21, 1975 and the date the guilty plea was entered, to wit, June 16, 1975, there were in excess of 20 adjournments, all, with few exceptions, upon defendant's demand and over the People's objection. In each instance, the basis of the adjournment was defendant's repeated plea that he needed time to secure his own attorney. In the course of time, *Huntley* and *Wade* hearings were conducted by his assigned counsel and, at one point, *pro se* habeas corpus applications by defendant resulted in a drastic reduction in bail. Shortly before the summer recess, on June 16, 1975, the case appeared on the calendar for trial and was marked "ready" by the People. The case had now been on the calendar of the trial part for better than six months, but defendant demanded still another adjournment, again for the purpose of retaining private counsel. There were on- and off-the-record discussions, during the course of which Mr. Brett, defendant's assigned counsel, an experienced and capable criminal trial lawyer, advised the court that defendant wished to withdraw his previously entered not guilty plea and to plead guilty to robbery in the second degree. As the taking of the plea was being recorded, and after defendant had responded that he was acting voluntarily, he said, in response to a question from the court, that he thought he was being pressured since the court refused to grant him another adjournment. With apparent asperity the court then stated that the requested adjournment would be granted but "with the clear understanding there will be no plea except robbery in the first degree." The court went on to say that it was going to raise defendant's bail and "I am going to fix bail consistent with the fact that this matter has been pending and the People have been ready to proceed to trial." Following that exchange defendant

said that the plea was voluntary, that he had possessed the gun during the robbery and that this would be his second felony conviction. On August 12, 1975 defendant was sentenced, as a second felony offender, to a term of imprisonment with a minimum of four years and a maximum of eight years and, according to the record, his only complaint at that time was not that his plea was improper or coerced, but that he was "being sentenced with an attorney who is not of my choice." It is now defendant's contention that he pleaded guilty under compulsion and that the court's attitude foreclosed any other course of action. It is elementary that so-called "plea-bargains" are not per se improper and that they play an important part in the administration of criminal justice, particularly in the disposition of today's heavy calendars. In *Santobello v New York* (404 US 257, 260) the court stated: "The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged." Simple justice, however, mandates that a plea must be knowingly and intelligently given and, if it be to any degree induced by fear or coercion, it will not be permitted to stand *(People v White,* 32 NY2d 393; *People v Flowers,* 30 NY2d 315). Thus, the sole issue here presented falls within a rather narrow ambit, to wit, whether the statements, the actions and the over-all demeanor of the Trial Judge at the time the plea was entered constituted unfair pressure resulting in a coerced plea, either as a matter of law, or upon the facts, or both (see *United States v Tateo,* 214 F Supp 560). It is clear that Criminal Term was here dealing with a streetwise, criminally experienced defendant, knowing and knowledgeable in the ways of the criminal law, who knew precisely and exactly the possible benefits to be gained from the delaying tactics he had so skillfully and successfully been pursuing since his arraignment. It is also clear that defendant was calmly and coolly seeking to manipulate not alone the court, but the entire criminal justice system, that he was fully conscious of the advantages and disadvantages of a trial as compared to a plea and that he knowingly and intelligently elected the latter. Turning our thoughts for the moment to the trial court's statements with respect to bail, the record discloses that the defendant's *pro se* applications to reduce bail had been granted and that his bail was reduced from $15,000 to $5,000. Although the grounds for the reductions are not disclosed, it is a proper inference that they were predicated, in part at least, upon the many delays, all of which had been caused by defendant's tactics. Under these circumstances, it was not unreasonable for the court to indicate that it would raise the bail to possibly preclude defendant from seeking a future reduction predicated upon the very delays that he alone was causing. It was entirely within the discretion of the court, in light of these facts, to decide the amount of bail to be fixed (see CPL 530.40, subd 2; *People ex rel. Shapiro v Keeper of City Prison,* 290 NY 393; *People ex rel. Devore v Warden of N. Y. City Prison,* 40 Misc 2d 943). The court herein did not abuse that discretion. Reviewing the colloquy as a whole, and although the Trial Judge may indeed have been unhappy in his choice of words, under all of the facts and circumstances here present we do not find that degree of pressure which would amount to coercion. The record here discloses a situation that is a far cry from the type of coercion condemned in *United States v Tateo (supra)* (see, also, *Murray v United States,* 419 F2d 1076). The record establishes that defendant was facing an indictment charging him, *inter alia,* with eight counts of robbery in the first degree, which carries a possible sentence of from 12½ to 25

years. As his delaying tactics abruptly were brought to a halt, defendant knowingly and intelligently, with neither "confusion" nor "coercion" present (see *People v Esajerre,* 43 AD2d 541), and with a full opportunity to assess the advantages and disadvantages of a plea versus a trial (see *People v White,* 32 NY2d 393, *supra),* made his election. He may not now disavow it. The judgment should be affirmed. Martuscello, Acting P. J., Latham, Hawkins and O'Connor, JJ., concur.