[970 NE2d 409, 947 NYS2d 386]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HANS ALEXANDER, Appellant.

Argued March 22, 2012; decided May 3, 2012

### POINTS OF COUNSEL

*Center for Appellate Litigation*, New York City (*Jonathan M. Kirshbaum* and *Robert S. Dean* of counsel), for appellant. Appellant's guilty plea was unlawful and involuntary because his reduced plea was conditioned upon the withdrawal of his constitutional speedy trial claim in direct violation of the rule set forth in *People v Blakley* (34 NY2d 311 [1974]), that a plea offer cannot contain such a condition. (*Barker v Wingo*, 407 US 514; *People v Muniz*, 91 NY2d 570; *People v Allen*, 86 NY2d 599; *People v Callahan*, 80 NY2d 273; *People v Seaberg*, 74 NY2d 1; *People v Parilla*, 8 NY3d 654; *People v Hansen*, 95 NY2d 227; *People v Friscia*, 51 NY2d 845; *People v White*, 32 NY2d 393; *People v Rodriguez*, 50 NY2d 553.)

*Robert T. Johnson, District Attorney*, Bronx (*Megan R. Roberts, Thomas R. Villecco, Joseph N. Ferdenzi* and *Stanley R. Kaplan* of counsel), for respondent. Defendant voluntarily abandoned his constitutional speedy trial claim; therefore, defendant's plea should not be vacated. (*People v Blakley*, 34 NY2d 311; *People v White*, 32 NY2d 393; *People v Rodriguez*, 50 NY2d 553; *People v Mower*, 97 NY2d 239; *People v Callahan*, 80 NY2d 273; *People v Taranovich*, 37 NY2d 442; *People v Rodriguez*, 95 NY2d 497; *People v Savage*, 54 NY2d 697; *People v Lomax*, 50 NY2d 351; *People v Wallace*, 26 NY2d 371.)

### OPINION OF THE COURT

READ, J.

Before defendant Hans Alexander pleaded guilty, the trial judge observed to defense counsel that she would accept the plea "on the condition" that defendant withdraw any and all outstanding motions, which included a recently filed pro se

constitutional speedy trial motion, and waive the right to appeal. During allocution, the judge twice asked defendant if he "under[stood]" that by entering into the guilty plea, all his "outstanding writs and motions" were "being withdrawn," and he responded that he did. We conclude that the judge's statements, considered in context, do not go against our decisions in *People v White* (32 NY2d 393 [1973]), *People v Blakley* (34 NY2d 311 [1974]) and *People v Sutton* (decided with *People v Callahan*, 80 NY2d 273 [1992]). Accordingly, we affirm the judgment of conviction and sentence in this case.

## I.

By indictment filed on December 8, 2006, the grand jury charged defendant and a codefendant, acting in concert, with third-degree criminal sale of a controlled substance (Penal Law § 220.39 [1]) and criminal sale of a controlled substance in or near school grounds (Penal Law § 220.44 [2]); while in jail awaiting trial, defendant filed numerous pro se motions and habeas corpus petitions. When defendant, his codefendant and the People appeared before Supreme Court on January 11, 2008, the judge informed them that although they were all "ready for trial" that day, she had "got[ten] word . . . literally just about two hours ago, that [defendant had] filed another writ with the [Appellate Division], which [had] been granted." Defendant claimed in this particular petition that his indictment was defective because the People neglected to instruct the grand jury on the agency defense (*see People v Lam Lek Chong*, 45 NY2d 64, 73 [1978] ["In this State it has long been held that one who acts solely as the agent of the buyer cannot be convicted of the crime of selling narcotics" (internal quotation marks and brackets omitted)]; *People v Valles*, 62 NY2d 36 [1984] [requiring prosecutor to charge exculpatory defenses to the grand jury]).[1]

The trial judge explained that because "that writ now [was] back before [her] and . . . [would] have to be decided[,] the People [would] have to be given a reasonable opportunity to respond," which meant that the trial had to be "put off." In light of her trial schedule and a pending move of the court's operations to a new building, she suggested an adjourned date of

---

1. Defendant's first assigned counsel made an omnibus motion in which he asked Supreme Court, among other things, to inspect the grand jury minutes. In a decision dated February 15, 2007, the court concluded that the evidence presented to the grand jury was legally sufficient to support the charges in the indictment, and that there were no other reasons for dismissal or reduction of the charges.

March 4, 2008, a seven-week delay. Defendant's attorney then informed the judge that his client had asked him "to make further inquiry" regarding a new offer conveyed by the prosecutor that day for a determinate sentence of 1½ years in prison, followed by one year of postrelease supervision, in exchange for a plea to a felony. He remarked that "[m]y client at first indicated that he wanted to think about it. And shortly after the Court . . . indicated what the adjourned date was going to be, he . . . asked me to make further inquiries with respect to whether or not—may I have a moment?" The judge answered "Yes," and a brief off-the-record discussion ensued at the bench.

The trial judge, addressing defendant's attorney directly, then stated as follows: "I just want you to know that I will accept the plea, obviously, on the condition that [defendant] is withdrawing any and all motions that are outstanding before the Court and he's waiving his right to appeal." The outstanding motions included a pro se speedy trial motion filed by defendant on December 29, 2007, and marked received in the judge's trial part on January 10, 2008, the day before the scheduled trial.[2] In this motion, defendant alleged a violation of his speedy trial rights under the federal and state constitutions, CPL 30.20 (1) (specifying that "[a]fter a criminal action is commenced, the defendant is entitled to a speedy trial") and CPL 30.30 (1) (a) (with exceptions, mandating dismissal where the People are not ready for trial within six months after commencement of a criminal action wherein the defendant is accused of at least one felony).[3]

Defendant's attorney next informed the judge that his client was "under the impression that he [could] be released from this courtroom," rather than "go Upstate." After some discussion, the judge clarified that defendant, in fact, would have to "go Upstate"—i.e., enter the state penal system to have the Department of Correctional Services (now the Department of Corrections and Community Supervision) calculate his jail time credit

---

2. While not critical to the outcome of this appeal, it should be noted that it is not clear from the record whether the trial judge herself was aware on January 11, 2008 of the existence or nature of this particular motion made by defendant, who routinely filed pro se writs and motions.

3. Defendant had previously filed a pro se speedy trial motion alleging violation of CPL 30.30 (2) (a), which Supreme Court denied. With exceptions, this provision mandates release upon bail or recognizance of a defendant accused of at least one felony if the People are not ready for trial within 90 days of the defendant's commitment to the sheriff's custody.

before his release. Upon hearing that apparently unwelcome news, defendant instructed his counsel to let the judge know he was "not interested" in entering a guilty plea.

After a pause in the proceedings, the trial judge and codefendant's counsel had some discussion. A further pause ensued, and then defendant's attorney told the judge that

"after having a number of conversations with [defendant] and also after having had an opportunity to review the writs that have been filed with the Court as well as the motions filed with the Court and the hearing minutes and so on, at this time [defendant] authorizes me to enter a plea of guilty on his behalf in full satisfaction of the indictment that is currently before the Court, to Penal Law Section 220.31, which is criminal sale of a controlled substance in the fifth degree, with the understanding that [he] will be receiving credit for all the time that he has currently served while in jail; with the further understanding that he will also be required to waive his right to appeal.

"And in addition to waiving his right to appeal, it is also with the understanding that he will move to withdraw any outstanding writs or any outstanding motions that he has filed, that I have adopted in the past."

The trial judge pointed out to defendant that he was being offered "the very minimum" sentence possible in light of his predicate felony status, and he acknowledged that he understood this. The judge added, "And you understand by taking this plea, all of your outstanding writs and motions that you have are being withdrawn; do you understand that?" to which defendant replied, "Withdrawn."

Defendant then acknowledged that he had been allowed enough time to discuss the plea offer with his attorney, with whose representation he was satisfied; that he understood he would be pleading to a D felony, fifth-degree criminal sale of a controlled substance, for the promised sentence of $1\frac{1}{2}$ years in prison plus one year of postrelease supervision; and that "by entering into this plea, all prior writs and motions that [were] outstanding [were] being withdrawn." He further confirmed that he understood that he was giving up his rights to a jury trial, to have the People prove his guilt beyond a reasonable doubt, to confront witnesses and to remain silent.

Defendant next admitted that, on November 18, 2006, acting with another, he sold cocaine to an undercover police officer. He averred that no one had forced him to plead guilty; that he was, in fact, guilty; and that the only promise made to him was as to his sentence. Defendant then signed a written waiver of his right to appeal and assured the court that he understood that by signing the waiver, he was giving up "certain legal rights . . . spelled out" in that document.[4] The judge adjudicated defendant a predicate felony offender and adjourned the case until January 30, 2008 for sentencing.

On January 17, 2008, defendant filed a pro se motion pursuant to CPL 220.60 (3), seeking an order permitting him to withdraw his guilty plea and reinstating the indictment. He asserted numerous reasons to support a claim that his plea was not knowing and voluntary, including ineffective assistance of counsel and that, under *Blakley*, "the nature of the speedy trial guarantee render[s] a waiver of such a claim or the withdrawal inherently coercive in a plea bargaining situation, so that a plea conditioned on a waiver or withdrawal must be vacated." In an affirmation in opposition served on February 28, 2008, the People, quoting extensively from the plea hearing's minutes, argued generally that the record contravened defendant's claims. In a decision and order filed on April 15, 2008, the new judge assigned to the matter ordered a hearing in light of the "[f]actual issues . . . raised by the opposing affirmations."

The hearing was held over four days, July 16, September 12, October 8 and October 24, 2008. Defendant called as a witness his attorney at the time he pleaded guilty, a 49-year-old criminal defense lawyer who had been practicing since 1986. The attorney, who began representing defendant in September 2007, testified that he had a "number of conversations" with defendant regarding his pro se motions; and that he had warned him about the risks associated with presenting the "very dangerous" agency defense at trial; namely, as a consequence, defendant's numerous prior convictions for drug offenses would become relevant and hence admissible. They also discussed the People's original plea recommendation of $3^{1}/_{2}$ years in prison in

---

**4.** The form written waiver stated that defendant agreed to waive "any and all rights to appeal from the judgment of conviction . . . , with the exception of any constitutional speedy trial claim which [he] may have advanced, the legality of the sentence, [his] competency to stand trial and the voluntariness of th[e] waiver." On this appeal, he is challenging the voluntariness of the waiver.

exchange for pleading guilty to third-degree criminal sale of a controlled substance, which defendant rejected out of hand. The attorney's description of what happened during the court appearance on the afternoon of January 11, 2008 was consistent with the plea hearing's minutes. He testified that although he advised defendant that, in his opinion, the People had made a "good offer" because defendant "wouldn't have to spend much more time in jail," he emphasized that "the decision would have to be" defendant's, and he "was ready to go forward to trial."

The attorney also related what happened in court on January 30, 2008 as defendant was about to be sentenced:

> "[W]hen we appeared in court, . . . [defendant] then indicated to the judge, after [she] . . . asked him a question concerning what he had told the Department of Probation as to his guilty plea, . . . something to the effect that he wanted to take his plea back.

> "At that point, the judge . . . indicated to [defendant] since he had also made a statement . . . that she was not—she did not advise him . . . that his writ had been granted and that since I was going to become a potential witness in connection with the case, since I was present when the judge . . . advised him . . . that his writ had been granted, she felt that it was best that I be removed from the case."

The attorney added that he turned over his case file to defendant's new assigned counsel (his third in this matter) on February 7, 2008.

Defendant testified that when he pleaded guilty his "number one point about this whole proceeding [was] that the indictment [was] defective" because the prosecutor did not inform the grand jury about the agency or other exculpatory defenses. Additionally, he was then unaware that it was "illegal . . . or unlawful for" a plea to be conditioned on withdrawal of an "otherwise valid . . . constitutional right to a speedy trial claim." He further protested that he felt pressured to plead guilty because the case was being adjourned.

Defendant insisted that no one ever told him that his habeas corpus petition relating to the agency defense had been granted. When the hearing judge commented that the plea minutes

reflected otherwise, defendant claimed that he did not at the time understand this to be the case or that he was agreeing to give up his agency defense, and that if he had appreciated either state of affairs, he never would have pleaded guilty. Excerpts from the prosecutor's charge, which were introduced into evidence, established that she did, in fact, instruct the grand jury on the agency defense, contrary to defendant's apparent belief and the allegations in his petition.

The hearing judge denied defendant's motion to withdraw his guilty plea. He concluded that defendant "knowingly, voluntarily and intelligently agreed to the plea," citing his apparent understanding of the proceedings, experience with the criminal justice system and ability to litigate pro se motions. Additionally, the judge was troubled by the "serious inconsistencies between the defendant's testimony and the record"; he noted that "[t]he delay in this case which would have occur[red as a result of the] writ proceeding was not intended as a threat, but was quite frankly reality." He further opined that "it's perfectly proper for a Court before [it] takes a plea [to] require that those applications and those motions be withdrawn." Thereafter, the judge imposed the agreed-upon sentence on defendant.

Defendant appealed and sought vacatur of his guilty plea on the ground it was unlawfully conditioned upon the withdrawal of his constitutional speedy trial claim. Concluding that defendant's "case [did] not fall within the ambit" of *Blakley* and *Callahan (Sutton)*, the Appellate Division applied the fact-specific analysis in *White* to determine whether defendant's guilty plea was coerced (82 AD3d 619, 621 [1st Dept 2011]). Under this approach, the court emphasized that the parties were ready for trial on the date of the plea; that after the trial judge brought up the necessity for an adjournment, "it was defense counsel who advised the [judge] that defendant had asked him 'to make further inquiry' regarding the People's offer," and "[i]n response, it was the [judge], not the prosecutor, that informed defendant that it would accept the plea only on the condition that [he withdrew] 'all motions that [were] outstanding' "; that "when defense counsel first advised the [judge] that defendant was not interested in the plea offer because he would not be immediately released, the [judge] set an adjourned date and neither [she] nor the prosecutor said anything designed to persuade defendant to change his mind and accept the plea offer"; and that "during the plea proceedings the [judge] twice asked defendant if he understood that by taking the plea all of his

outstanding writs and motions were being withdrawn" (*id.* at 621-622).

The court added that at the plea withdrawal hearing, "defendant explained that he inquired into the plea offer because he felt pressure as a result of the delay . . . from allowing the People to respond to his writ," and "[a]t no time . . . testif[ied] that he was concerned about the withdrawal of his speedy trial motion" (*id.* at 622). In sum, the Appellate Division concluded that "[g]iven these circumstances, [Supreme Court] properly exercised its discretion in denying defendant's motion to vacate the plea on the ground that it was knowingly, intelligently and voluntarily entered" (*id.*).

The court distinguished *Blakley* and *Callahan* (*Sutton*) principally on the ground that, in those cases "the right to appeal the constitutional speedy trial claim had matured in that the defendants had pleaded guilty after their speedy trial motions had been denied," whereas "[h]ere, as in *White*, the appellate claim had not matured in that the speedy trial motion remained pending when the plea was entered" (*id.* at 623). Noting that, under *Blakley* a "waiver of appeal is ineffective to the extent that it precludes appellate review of constitutional speedy trial claims" when such claims are denied, the court observed that "it is equally established that a properly interposed constitutional claim may be deemed abandoned or waived if not pursued" (*id.*, citing *People v Rodriguez*, 50 NY2d 553, 557 [1980]). Further, vacating defendant's guilty plea under the circumstances presented

> "would create the paradoxical result of allowing defendant to vacate his plea solely because the [judge taking the plea], rather than remaining silent, advised him that all pending motions had to be withdrawn as a condition of his plea, even though defendant is barred from pursuing the merits of his speedy trial motion in this Court" (*id.* at 624).

Finally, the Appellate Division mentioned the "factual distinctions between *Blakley* and this case"; namely, in *Blakley*, the prosecutor forced the defendant to choose between a plea conditioned on the waiver of his speedy trial claim or a trial made unfair by a three-year delay. By contrast, in this case

> "the alleged delay was approximately 13 months, defendant was ready to proceed to trial on the plea

> date despite the pendency of his speedy trial motion, defendant raised the plea offer only because he felt pressured by the fact the trial was going to be further delayed due to his writ, and, in response to defendant's inquiry about the plea, it was an impartial judge who raised the condition that defendant waive all pending motions and ensured that defendant understood and agreed to all of the terms of the plea offer" (*id.*).

The concurring Justice expressed the view that a "central issue" in this matter was whether the case-specific approach endorsed in *White* "remain[ed] good law in light of" our decisions in *Blakley* and *Callahan* (*Sutton*) (*id.* [McGuire, J., concurring]). He concluded that case-specific analysis was reasonable where an undecided constitutional speedy trial claim was pending at the time of the guilty plea, noting that otherwise prosecutors would have "powerful incentives" not to offer reduced pleas until after such a motion, even if frivolous, was decided (*id.* at 627); and

> "an otherwise identically situated defendant [would not be] entitled to vacatur of a guilty plea or any other relief if no one, not the court, the prosecutor or defense counsel, [made] any mention of a pending constitutional speedy trial motion. In that situation, the speedy trial claim would be waived by operation of law and the defendant would be entitled to no relief. A different result should not obtain merely because of on-the-record efforts by the court, the prosecutor or defense counsel to confirm or make clear to the defendant that the plea of guilty effectively waives the undecided constitutional speedy trial motion" (*id.* at 628).

He subsequently granted defendant's application for leave to appeal, and we now affirm.

## II.

We begin our analysis by reviewing *White*, *Blakley* and *Sutton*.

### White

On August 30, 1967, a felony information was filed accusing White and two others of a robbery occurring in Yonkers on July 22, 1967. White, incarcerated in a Queens jail at the time, was soon advised orally of the detainer, which was, however, not lodged until February 10, 1968. He was indicted for first-degree

robbery nearly three years later, on December 23, 1970, while serving a prison sentence for other crimes, and was arraigned nearly a year later still, on November 15, 1971. His assigned counsel promptly brought a CPLR article 78 proceeding to dismiss the indictment on speedy trial grounds. According to White's attorney, Supreme Court denied the petition on the merits, but did not enter any order from which an appeal might be taken. Then, on December 4, 1971, the District Attorney advised defense counsel that White would be brought to trial on December 15, 1971.

On December 7, 1971, White sought, by motion returnable on December 17, 1971, to dismiss the indictment, alleging that the 51-month delay between August 1967 and November 1971 denied him his constitutional and CPL 30.20 rights to a speedy trial. Meanwhile, on December 14, 1971, the prosecutor, in addition to making an affirmation in opposition to White's speedy trial motion, persuaded the court to mark the case ready for trial the next day, subject to a decision on the motion. That same day, the prosecutor offered White a plea to third-degree robbery on the condition that he withdraw his speedy trial motion *before* County Court rendered its decision; otherwise, the offer would be off the table. White agreed and pleaded guilty to a reduced charge on December 15, 1971.[5] Upon White's appeal, the Appellate Division affirmed in a one-sentence opinion stating that "any right which defendant may have had with respect to a dismissal of the indictment on account of delay was expressly waived by him" (40 AD2d 540, 540 [2d Dept 1972]).

The prosecutor took the position that White only had a right to test his speedy trial claim on appeal if he was convicted after trial or, alternatively, pleaded guilty to the indictment—options that he knowingly and voluntarily gave up by choosing to plead

---

**5.** At the conclusion of the plea hearing, the prosecutor asked White to withdraw "all previously made motions in connection with this case," and he agreed. The prosecutor also asked him to waive his right of appeal, and defense counsel responded that he was "not sure of the legality of that, but if . . . legal, [White was] willing to do that." When the prosecutor pressed the matter, emphasizing that the People would "not accept this offered plea unless [the defendant was] willing to withdraw all previously made motions and . . . in fact agree[ ] to waive his right to appeal from the judgment of conviction," the judge interjected that he was "going to instruct this defendant he has a right to appeal." This led the prosecutor to elicit an affirmative response from White to the question, "[I]s it my understanding that you are waiving your right to appeal the judgment of conviction in consideration of this plea, if it is legally possible for you to do that?"

guilty to a lesser charge. We disagreed, observing that an "element of coercion [was] present not only in [White's] waiver of his right to a speedy trial but also in his plea" because he had "no time to apprehend the relevant circumstances and likely consequences of his waiver" (32 NY2d at 399-400 [internal quotation marks omitted]). We stressed that "[p]articularly highhanded" was the prosecutor's "limitation that [White's] decision be given before the outcome of the speedy trial motion or the 'deal was off'; and this, after the trial judge had moved up the return date of the motion" (*id.* at 400). Concluding that "the district attorney's maneuvering may only be characterized as unfair and over-reaching," and that White was "clearly denied" a speedy trial as a matter of law, he was, in our view, "entitled to reversal of his conviction and dismissal of the indictment." We therefore reversed the Appellate Division's order and dismissed the indictment. (*Id.* at 400-401.)

*Blakley*

Blakley was arrested on November 15, 1965 and indicted on January 11, 1966 for second-degree assault (four counts) and a weapon possession crime in connection with the shooting of two victims on November 14, 1965. On February 21, 1968, he moved in County Court to dismiss the indictment for "want of prosecution" pursuant to section 668 of the then effective Code of Criminal Procedure.[6] By decision dated March 6 and order

---

6. This provision stated as follows:
   "If a defendant, indicted for a crime whose trial has not been postponed upon his application, be not brought to trial at the next term of the court in which the indictment is triable, after it is found the court may, on application of the defendant, order the indictment to be dismissed, unless good cause to the contrary be shown" (*see* Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 30.30, at 206-207 [2003 ed] [characterizing section 668 as one of several "archaic" and "wholly ineffective" sections of the Code of Criminal Procedure, which the CPL Revision Commission did not "carr(y) forward into the CPL"; the ready-for-trial time limitations adopted by the Legislature when it amended CPL 30.30 in chapter 184 of the Laws of 1972 were intended to create more enforceable requirements along these lines]).

In *People v Friscia* (51 NY2d 845, 847 [1980]), we decided that a guilty plea operates as a waiver of the statutory right to dismissal under CPL 30.30 (citing *People v Brothers*, 50 NY2d 413, 418 [1980] [noting in dicta that "(i)nasmuch as a defendant's right to a CPL 30.30 dismissal has its origin solely in legislative enactment which is in no way expressive of or dependent on any constitutional right to speedy trial, it may be that a subsequent plea of guilty . . . should be held to have operated as a waiver of the statutory entitlement to dismissal"]).

entered April 4, 1968, the court denied the motion, commenting that the delay, while "regrettable," had not "unduly prejudiced" Blakley, who was out of jail on bail.

On February 4, 1969, three years and one month following the filing of the indictment, Blakley was finally brought to trial. After testimony was taken from the two victims, he offered to plead guilty to two counts of second-degree assault. The prosecutor, however, would only recommend acceptance of the plea on the condition that Blakley agreed to withdraw any motions made on his behalf. Blakley acquiesced,[7] but subsequently appealed, alleging that this requirement rendered his guilty plea involuntary. The Appellate Division, in a one-sentence opinion, modified in the interests of justice by reducing the concurrent sentences imposed on Blakley to time served, and, as so modified, affirmed (38 AD2d 563 [2d Dept 1971]).

We stated at the outset of our opinion that Blakley's appeal

"require[d] us to decide *whether a prosecutor* may condition an offer to recommend a reduced plea upon the defendant's withdrawal of his claim that his right to a speedy trial has been violated. We conclude that the nature of the speedy trial guarantee renders such a condition inherently coercive in a plea bargaining situation and that the plea so conditioned must be vacated" (34 NY2d at 313 [emphasis added]).

Observing that the denial of a speedy trial claim ordinarily survives a guilty plea,[8] we commented that what

"the prosecutor attempted, in effect, [was] to deprive the defendant of his right to appeal the adverse determination . . . by confronting him with a possibly unfair trial (because so tardy) on the one hand, and, on the other, offering him a reduced plea only if he would relinquish the speedy trial claim" (*id.* at 314).

---

7. The prosecutor stated that "[b]efore recommending acceptance of this plea, I would ask [defense counsel] to withdraw any motions made heretofore by prior counsel and himself" (34 NY2d 313-314). Blakley's attorney responded, "Oh, yes, I do so." The court questioned, "All motions are withdrawn, [counsel]?" and the attorney replied, "Yes, sir." The prosecutor then recommended acceptance of the plea sought by Blakley.

8. Blakley's speedy trial claim was statutory, as previously noted. We later decided that only constitutional speedy trial claims survive a guilty plea (*see supra* at 214 n 6).

We opined that "a prosecutor must not make the right to a speedy trial an item of barter in a plea bargaining situation" for "a variety of reasons," including "a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused"; and considerations of

> "fundamental fairness . . . since one of the purposes of the speedy trial guarantee is to prevent a defendant from being exposed to the hazard of a trial, after so great a lapse of time that the means of proving his innocence may not be within his reach—as, for instance, by the loss of witnesses or the dulling of memory" (*id.* [internal quotation marks omitted]).

Thus,

> "[b]ecause the criminal justice system should scrupulously avoid the possibility that a plea of guilty may be tainted by unfairness, and because prosecutors should not be allowed to submerge speedy trial challenges, and the societal interests they represent, in plea bargains, we hold that a reduced plea conditioned upon a waiver of a speedy trial claim must be vacated. And this result follows regardless of the defendant's success on the underlying speedy trial claim. . . .

> "Of course, not only is the plea tainted, but the purported waiver of the speedy trial claim is ineffectual" (*id.* at 315 [*citations omitted*]).

Finally, "in the interests of judicial economy," we reached the merits of Blakley's underlying speedy trial claim, deciding that good cause had not been shown for delay of the trial, as was required under section 668 (*id.* at 313, 317-318). We therefore reversed the Appellate Division's order and dismissed the indictment.

*Sutton*

Sutton, who was arrested on March 18, 1987 on several drug-related charges, subsequently moved for dismissal on statutory and constitutional speedy trial grounds because of the People's 13-month delay in responding to his omnibus motion. Supreme Court denied the motion, and Sutton pleaded guilty to second-degree criminal sale of a controlled substance in full satisfaction of the indictment. At the plea hearing on May 31, 1989, the

prosecutor stated that "[a]s a condition of this plea it was . . . negotiated that this defendant would waive any and all rights to appeal that he ordinarily would have." The trial judge then questioned, "You understood that? You heard that mentioned before by your lawyer, Mr. Sutton?" and Sutton responded, "Yes." At that point, he was remanded.

Sutton then tried to obtain review of the trial judge's unfavorable disposition of his constitutional speedy trial motion, but the Appellate Division, enforcing the waiver, dismissed his appeal (175 AD2d 272 [2d Dept 1991]). As we subsequently explained, that court, citing *Rodriguez, White* and *Blakley,* expressed the view that

> "even constitutional speedy trial claims are waivable and that a waiver such as [Sutton's] should be enforced unless the record on appeal demonstrates that it was made under duress by a defendant whose only alternative was to face a trial whose fundamental fairness was compromised as a result of the delay" (80 NY2d at 279 [internal quotation marks omitted]).

We concluded that the Appellate Division had "misconstrue[d]" our decisions in *Blakley* and *Rodriguez* (*id.* at 282). In particular, we commented that in *Blakley,*

> "this Court went beyond *White*'s case-specific analysis and held that the nature of the speedy trial guarantee renders [a waiver of such a claim] *inherently* coercive in a plea bargaining situation, so that a plea conditioned on a waiver must be vacated regardless of the substantive merits of the claim . . . While the Court did give effect to what it termed a 'waiver' of a speedy trial claim in *Rodriguez* . . . , that holding did not in any way impair the rule it established in *Blakley*. Rather, *Rodriguez* stands only for the limited proposition that a defendant who initially interposes a constitutional speedy trial claim but subsequently abandons it before a determination on the claim is made cannot subsequently raise that claim on appeal" (*id.* [internal quotation marks omitted]).

Citing *People v Seaberg* (74 NY2d 1 [1989]),[9] we added that, in view of society's interest in promoting speedy trials, "the parties cannot be permitted to foreclose appellate review through the plea bargaining process" and held, as in *Seaberg*, that

"a bargained-for waiver of the right to appeal is ineffective to the extent it impairs the defendant's ability to obtain appellate review of a constitutional speedy trial claim. Moreover, this rule applies without regard to whether the facts in the particular case suggest duress arising from the circumstances underlying the speedy trial claim itself. In this case, the Appellate Division clearly erred when it declined to entertain defendant Sutton's constitutional speedy trial claim on the merits because of the absence of a particularized showing of duress. For that reason, the [Appellate Division's] order should be reversed and the matter remitted so that the Court can consider the merits of defendant's constitutional speedy trial claim" (80 NY2d at 282).

Upon remittal, the Appellate Division rejected Sutton's argument that his indictment should be dismissed on constitutional speedy trial grounds, and affirmed the judgment—i.e., his plea was not vacated (191 AD2d 599 [2d Dept 1993], *lv denied* 81 NY2d 1020 [1993]).[10]

## III.

As the foregoing discussion makes clear, our decisions in *White*, *Blakley* and *Sutton* dealt *solely* with attempts by prosecutors to manipulate plea bargaining so as to preclude judicial consideration of constitutional speedy trial claims, thereby obviating the risk of dismissal of indictments on these grounds. In these cases, the prosecutor recommended the plea contingent upon the defendant's agreement to give up the right to have a

---

**9.** In *Seaberg*, we held that the right to appeal may be plea-bargained away, with certain exceptions, including constitutional speedy trial claims (74 NY2d at 9). Sutton's guilty plea and appeal waiver slightly predated our decision in *Seaberg*. The Appellate Division cited *Seaberg* (175 AD2d at 273), but inexplicably did not discuss its effect on the enforceability of Sutton's waiver of the right to appeal insofar as he sought review of the denial of his constitutional speedy trial claim.

**10.** Sutton did not *ask* for his plea to be vacated, although it is not obvious why this should make a difference if *Blakley* mandates plea vacatur, as the dissent and defendant maintain.

speedy trial motion decided (*White*), or to have an adverse determination of the motion reviewed by the appellate courts (*Blakley* and *Sutton*). That is simply not what happened here. There were no such conditions or "strings" attached to the People's plea offer, as described by defendant's attorney both at the plea hearing and the plea withdrawal hearing. The question on which defendant focuses—whether, or to what extent, *Blakley* and *Sutton* may have modified *White*—is essentially beside the point in this case, which does not present a fact pattern of prosecutorial abuse or overreaching, and where defendant— unlike White, Blakley and Sutton—has shown no apparent interest in assuring judicial resolution of his constitutional speedy trial claim.

The trial judge on the morning of January 11, 2008, the scheduled trial date, learned that the Appellate Division had just granted defendant's latest habeas corpus petition to the extent of transferring the matter to her for decision; the day before, a constitutional speedy trial motion filed by defendant, a prolific pro se litigant, was marked received in her trial part. At the plea hearing, she might have said that defendant should understand that, once he pleaded guilty, she would not be deciding any of his pending writs or motions; or that these writs and motions would be deemed withdrawn upon his guilty plea. Or, as the concurring Justice in the Appellate Division pointed out, she might have said nothing whatsoever on the topic since defendant abandoned the writs and motions by operation of law as soon as he pleaded guilty. Instead, electing to explain how defendant's guilty plea would affect the status of his outstanding writs and motions, she used the word "condition," implicating *White, Blakley* and *Sutton*.

We expect judges to express the consequences of a guilty plea clearly to the defendant during the plea hearing. But in cases too numerous to list dating from at least 1967, we have repeatedly steered clear of "a uniform mandatory catechism of pleading defendants" in favor of "broad discretions controlled by flexible standards" (*People v Nixon*, 21 NY2d 338, 353-354 [1967]). This being so, it should not matter that the trial judge failed to choose what we might in hindsight consider to be more felicitous words or turns of phrase when addressing defendant at the plea hearing. Her meaning was plain enough: defendant's guilty plea meant his pending writs and motions would not be decided. In sum, on the record in this case "[t]here can be little doubt that the [plea] bargain was reasonable, that defendant

knew and understood the terms of it and that he willingly accepted them" (*Seaberg*, 74 NY2d at 12).

Accordingly, the order of the Appellate Division should be affirmed.

CIPARICK, J. (dissenting). Because the trial judge in this case expressly conditioned defendant's plea on the withdrawal of his constitutional speedy trial motion, his plea was inherently coercive in violation of our precedent and should be vacated. Therefore, I respectfully dissent.

I agree with the majority that *People v White* (32 NY2d 393 [1973]), *People v Blakley* (34 NY2d 311 [1974]) and *People v Sutton* (decided with *People v Callahan*, 80 NY2d 273 [1992]) are controlling here. In an effort to distinguish the pleas we vacated in those cases with the plea here, however, the majority places undue emphasis on the absence of any "attempts by [the] prosecutor[ ] to manipulate [the] plea bargaining so as to preclude judicial consideration of [defendant's] constitutional speedy trial claim[ ]" (majority op at 218). In so doing, the majority misapprehends the centrality of our holdings in those cases: a plea must be vacated where it is conditioned on the withdrawal of a constitutional speedy trial claim. That the trial court—rather than the People—sought such condition before permitting defendant to plead guilty should not change the result.

Indeed, our decision in *Blakley* makes certain that our analysis should hinge on the special "nature of the [constitutional] speedy trial guarantee" (34 NY2d at 313). Critically, we explained that

> "one of the purposes of the speedy trial guarantee is to prevent a defendant from being exposed to the hazard of a trial, after so great a lapse of time that the means of proving his innocence may not be within his reach—as, for instance, by the loss of witnesses or the dulling of memory" (*id.* at 314 [internal quotation marks omitted]).

Thus, in reversing the conviction in *Blakley* (and ultimately dismissing the indictment on the merits of the defendant's motion), we observed that it was fundamentally unfair to "deprive the defendant of his right to appeal the adverse determination" of his constitutional speedy trial motion by insisting that he withdraw such motion before entering a guilty plea (*id.*).

It is true that it was the prosecutor in *Blakley* and not the court who insisted that the defendant withdraw his speedy trial

motion. Unlike the majority, I do not see how that factor is in any way dispositive. Rather, our holding in *Blakley* is clearly rooted in protecting a defendant, faced with the prospect of a potentially untimely trial, from having to accept a plea offer conditioned on the relinquishment of a potentially meritorious constitutional speedy trial claim (*see id.* at 314-315). Whether a prosecutor or a trial judge conditions a plea upon such relinquishment should not alter a reviewing court's inquiry. In either case, the plea should be vacated (*see also Sutton*, 80 NY2d at 282).

Our decision in *White*, which predates *Blakley*, further supports this position. In *White*, as the majority notes, the prosecutor offered the defendant a plea to a reduced count on the condition that he withdraw his speedy trial motion before the court had an opportunity to review the merits of the claim. In reversing the conviction (and ultimately dismissing the indictment on the merits of the defendant's motion), we stressed that the prosecutor's "maneuvering may only be characterized as unfair and over-reaching" and "[p]articularly highhanded" (32 NY2d at 400). What occurred in this case is no different. Is a trial court's insistence that a defendant withdraw an undecided constitutional speedy trial motion before permitting a defendant to plea any less "unfair and over-reaching" or "highhanded"? The answer, of course, has to be "no."

Nor can I agree with the majority's seemingly alternative basis for affirming the judgment of conviction and sentence: that the trial court merely intended to inform defendant that "his pending writs and motions would not be decided" (majority op at 219) upon the entry of his guilty plea. That is not what the trial court said. The trial court, in no uncertain terms, stated: "I just want you to know that I will accept the plea, obviously, on the condition that [defendant] is withdrawing any and all motions that are outstanding before the Court." In my view, there is a huge distinction between a motion or claim that goes undecided and is therefore abandoned by operation of law upon the entry of a guilty plea (*see People v Rodriguez*, 50 NY2d 553, 557 [1980]) and a court's insistence that a defendant first withdraw all "his pending writs and motions" before the plea proceeding may ensue. While I agree with the majority that "we have repeatedly steered clear of 'a uniform mandatory catechism of pleading defendants' in favor of 'broad discretions controlled by flexible standards' " (majority op at 219, quoting *People v Nixon*, 21 NY2d 338, 353-354 [1967]), the trial court could have

explained much more explicitly that it would not have occasion to consider any of defendant's outstanding motions—including his constitutional speedy trial motion—once he entered a plea of guilty.

Accordingly, I would vote to reverse the judgment of conviction and sentence, and remit to Supreme Court for further proceedings in accordance with this writing.

Judges GRAFFEO, SMITH and PIGOTT concur with Judge READ; Judge CIPARICK dissents and votes to reverse in a separate opinion in which Chief Judge LIPPMAN and Judge JONES concur.

Order affirmed.