*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, | ) | |
| | ) | Supreme Court No. S-15917 |
| Petitioner, | ) | Court of Appeals No. A-10587 |
| | ) | |
| v. | ) | Superior Court No. 3AN-99-09867 CR |
| | ) | |
| SEAN WRIGHT, | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 7200 – September 22, 2017 |
| | ) | |

Petition for Review from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Philip R. Volland and Michael R. Spaan, Judges.

Appearances: Timothy W. Terrell, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Petitioner. Margie Mock, Contract Attorney, Anchorage, and Quinlan G. Steiner, Public Defender, Anchorage, for Respondent.

Before: Stowers, Chief Justice, Maassen, Bolger, and Carney, Justices, and Matthews, Senior Justice.* [Winfree, Justice, not participating.]

MATTHEWS, Senior Justice.
BOLGER, Justice, concurring.
CARNEY, Justice, concurring in part and dissenting in part.

---

\*      Sitting by assignment made pursuant to article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

# I.    INTRODUCTION

In November 1999 the State filed a felony information charging Sean Wright with sexually abusing two young girls. Wright was not arrested or indicted on these charges until almost five years later. He moved to dismiss the charges, claiming, among other reasons, that his right to a speedy trial had been violated. The superior court denied this motion. On appeal, the court of appeals ordered a reassessment of Wright's claim.

We granted the State's petition for review and now decide two questions:

(1) Do speedy trial rights begin when a felony information is filed, or only when a defendant is arrested or indicted?

(2) Did the superior court err when it decided that Wright was more responsible than the State for the delay?

We conclude that speedy trial time begins to run from the filing of an information. We also find that the superior court did not err in attributing primary responsibility for the delay to Wright.

# II.    FACTS AND PROCEEDINGS

## A.    Facts

The State began investigating Wright in February 1999 after receiving a report that Wright had sexually abused his eleven-year-old stepdaughter, K.A. K.A. and her mother, Evelyn Wright, had confronted Wright about the abuse, and Wright moved out of the home, at which point they informed the police. Alaska State Trooper Investigator Ruth Josten interviewed K.A. and Evelyn on February 16 and 17, 1999. Evelyn indicated that Wright may have also abused another child, M.C., the daughter of his prior long-term partner. On March 4, Josten made contact with M.C., who confirmed that Wright had sexually abused her a decade prior.

When the investigation into the sexual abuse began, Wright left the state. Initially, he stayed with his brother in Arkansas. He subsequently decided to leave Alaska permanently and, over the next five years, worked various jobs in Arkansas, Mississippi, Alabama, Georgia, Oklahoma, Tennessee, and Minnesota.

At first, Wright stayed in contact with Evelyn via phone and letter. He called Evelyn on February 28 and March 1, 1999, but would not say where he was. Josten placed a phone trap on Evelyn's phone on March 2. With the phone trap, the Matanuska Telephone Authority identified phone calls from Wright to Evelyn on March 9, 10, and 11 as coming from Arkansas. In phone calls between February 28 and April 1, Wright expressed concern that the calls might be monitored by police, checked to see whether a warrant had been issued for him, indicated that he was attempting to retain counsel, and expressed his desire to achieve a non-criminal resolution of the allegations against him.

In mid-March 1999, he returned to Alaska. He stayed with a friend in Anchorage except for the weekend of March 20-21, which he spent with Evelyn in Wasilla. While back in Alaska he sold land to a friend, arranged to sell his truck, and placed his personal belongings in storage. On March 22 he formally resigned from his job and took a "red-eye" flight that night back to Arkansas. While Wright was waiting for his flight out of Alaska, he wrote to a friend:

> I don't know what's going on but I got a bad feeling, time to travel while I can. Note to trust no one, I won't call for a long time and don't know where I'm going yet. Have to stick to myself and stay away from family and friends till my attorney knows what's happening and how to deal with it. So I act like a termite for a while and work where I can to pay lawyer and survive.

Josten did not learn that Wright had been in Alaska until May 1999. Wright did not return to Alaska until after he was arrested in Minnesota in 2004.

Wright telephoned Evelyn frequently for several months after permanently leaving the state, but according to Evelyn, this regular contact ended after a warrant was issued. On May 6, 1999 Wright wrote to Evelyn to send her an address where he could receive mail. The address was his brother's in Vilonia, Arkansas, but it was clear this was only a forwarding address. He wrote, "Bill will get my mail to me were [sic] I'm at." This was the only address Evelyn and Josten had for Wright.[1] The record reflects that Wright also occasionally received mail at several mailing addresses in Russellville, Arkansas, where he at times lived with a girlfriend.[2] And Wright kept his brother apprised of where he was working.

Josten completed her investigation in June 1999. She forwarded the information she had gathered to the district attorney's office for review, and, aware that Wright had fled the state, requested that an extraditable arrest warrant issue. Her request was declined, "inexplicably," according to the superior court.

Five months later, in November 1999, the State filed a criminal information with the court charging Wright with eleven counts of sexual abuse of a minor. On November 16, 1999, an arrest warrant was issued for Wright. But the warrant was non-extraditable, so it was not placed in the FBI's National Crime Information Center system.

---

[1] Evelyn used the Vilonia address to contact Wright in order to obtain a dissolution of their marriage. The Palmer superior court did so as well. Wright waived his right to appear in the dissolution proceedings and signed the dissolution paperwork before a notary in Arkansas.

[2] At one of the Russellville addresses, Wright received a summons from a law firm about a case in Juneau regarding his overdue student loans. He also gave a Russellville address to the Alaska Bureau of Vital Statistics when he made a request for a death certificate.

In the summer of 1999, Josten was reassigned. Between then and 2004, she periodically checked for information about Wright using databases available to Alaska State Troopers, but she made no other efforts to locate Wright.

Wright obtained an Arkansas driver's license in 2001. And between 1999 and 2004 he worked at a number of nuclear facilities requiring security clearance. Had his warrant been entered into the National Crime Information Center database, his employers would have discovered it.

On September 17, 2004, almost five years after the felony information was filed, Alaska State Trooper Sergeant Iliodor Kozloff received an inquiry from an employer in Minnesota about Wright.[3] Sgt. Kozloff confirmed there was an arrest warrant for Wright, but discovered that it was non-extraditable. He then contacted the district attorney's office, which decided to obtain an extraditable warrant. Wright was subsequently arrested and brought back to Alaska.

On October 3, 2004, Wright was arraigned on the charges filed in 1999. On October 12, 2004, a grand jury indicted Wright on eighteen counts of sexual abuse of a minor covering the abuse of K.A., M.C., and a third girl, T.W.[4]

B.     The Superior Court Proceedings

In August 2005 Wright filed a motion to dismiss the indictment claiming that the delay in prosecuting him violated his due process and speedy trial rights. After extensive briefing and an evidentiary hearing spread over seven non-consecutive days,

---

[3]     According to the State, the personnel officer who made the inquiry was suspicious since "it appeared that Mr. Wright wasn't providing any residences since living in Alaska."

[4]     The State later agreed to dismiss the counts pertaining to the abuse of T.W. on statute of limitations grounds.

Superior Court Judge Philip Volland denied the motion in a 13-page written opinion. The discussion portion of Judge Volland's opinion is set out in the appendix.

With respect to the due process claim, the court determined that Wright had failed to show actual prejudice or unreasonable delay, and found Wright largely responsible for the delay.

As to the speedy trial claim, the court implicitly determined that the speedy trial clock began to run when the information was filed in November 1999. The court then applied a four-factor balancing test to determine whether the delay deprived Wright of his right to a speedy trial. The test, laid out by the Supreme Court of the United States in *Barker v. Wingo*, requires a court to consider: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the speedy trial right, and (4) prejudice to the defendant.[5] The superior court found that none of the latter three factors favored Wright.

Wright unsuccessfully sought interlocutory review in state and federal courts.[6] He also brought numerous other motions before the case finally came to trial in May 2009. Wright renewed his speedy trial motion just prior to trial. Superior Court Judge Michael Spaan denied this motion, relying on Judge Volland's decision. Before the jury began deliberations Wright again renewed his motion to dismiss on speedy trial grounds. Judge Spaan again denied this motion. The jury convicted Wright on eight

---

[5]     407 U.S. 514, 530 (1972). In *State v. Mouser*, the court of appeals used this test in evaluating a speedy trial claim arising under the Alaska Constitution. 806 P.2d 330, 340 (Alaska App. 1991).

[6]     *Wright v. State*, 347 P.3d 1000, 1005 & n.3 (Alaska App. 2015).

counts of sexual abuse of a minor involving M.C. and five counts involving K.A. After Wright was sentenced, he appealed to the court of appeals.[7]

## C. The Court Of Appeals' Decision

The court of appeals held that Wright's speedy trial claim under the federal constitution was without merit.[8] The court explained that federal courts have held that such claims do not begin to run until either an arrest or the filing of formal charges in a court having jurisdiction to try to accused, whichever comes first.[9] Since the November 1999 information was filed in the district court, which does not have jurisdiction to try felonies, the federal speedy trial right did not attach until Wright's arrest in September 2004.[10] Wright made no claim that the post-arrest delay violated his rights. He therefore had no viable federal speedy trial claim.[11]

But the court held that Wright's state speedy trial right attached when the felony information was filed in November of 1999.[12] The court based its holding in part on the court of appeals' decision in *State v. Mouser*[13] and in part on this court's decision in *Yarbor v. State*.[14]

---

[7]     *Id.* at 1005.

[8]     *Id.* at 1005-06.

[9]     *Id.* (citing 5 WAYNE R. LAFAVE, JEROLD H. ISRAEL, NANCY J. KING & ORIN S. KERR, CRIMINAL PROCEDURE § 18.1(c), at 110 (3d ed. 2007)).

[10]     *Id.* at 1006.

[11]     *Id.*

[12]     *Id.* at 1006-07.

[13]     806 P.2d 330 (Alaska App. 1991).

[14]     546 P.2d 564 (Alaska 1976).

Turning to the trial court's decision, the court of appeals found that the trial court had misapplied the four-factor *Barker* test.[15] According to the court of appeals, the trial court erred in finding Wright partially responsible for the delay because after he left Alaska he "was not hiding out, and the State had avenues of locating him" that likely would have been productive.[16] Further, the trial court should not have faulted Wright for failing to assert his speedy trial right because he was unaware that charges had been filed.[17] Moreover, the court of appeals held that since the lengthy delay was the responsibility of the State, a presumption of prejudice arose and additional findings were required as to whether the State had met its burden of rebutting the presumption or showing extenuating circumstances.[18]

The court of appeals noted that pretrial determinations of speedy trial claims are necessarily provisional because prejudice can be better evaluated after a trial, so it instructed the superior court to apply the four-factor test to the whole period between the filing of the information and the trial.[19] The court suggested that the pre-arrest delay, which it found to be the responsibility of the State, might be counterbalanced by the post-arrest delay, if found to be the responsibility of Wright.[20] The court further suggested

---

[15]    *Wright*, 347 P.3d at 1007-09; *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

[16]    *Wright*, 347 P.3d at 1008.

[17]    *Id.* at 1009.

[18]    *Id.* at 1009-11.

[19]    *Id.* at 1010-11.

[20]    *Id.* at 1011.

that Wright's post-arrest litigation conduct might indicate that he was not actually interested in a speedy trial.[21]

The State filed a petition for review to this court contending that the speedy trial time should have run from Wright's 2004 arrest or indictment, rather than from the 1999 information. After oral argument we ordered supplemental briefing on whether the court of appeals erred in attributing the pre-arrest delay to the State rather than, as the superior court did, primarily to Wright's flight from the state once he realized he was under investigation.

## III. STANDARDS OF REVIEW

The proper interpretation of the Alaska Constitution is a "question[] of law to which we apply our independent judgment, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[22]

We review a trial court's findings of fact for clear error,[23] but the assessment of the legal consequences of the trial court's findings of fact is a question of law that we review de novo.[24]

---

[21]    *Id.* at 1009, 1011 (citing *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)).

[22]    *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1115 (Alaska 2007) (citing *State Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 858 (Alaska 2003)).

[23]    *Johnson v. State*, 328 P.3d 77, 81 (Alaska 2014).

[24]    *See Michael v. State*, 115 P.3d 517, 519 (Alaska 2005); *Meyer v. State*, 368 P.3d 613, 615 (Alaska App. 2016).

"[W]e give no deference to the court of appeals's conclusions when we grant a petition for review."[25]

## IV. DISCUSSION

### A. Purposes Of The Right To A Speedy Trial

This case concerns the speedy trial guarantee expressed in the Alaska Constitution and its relationship to procedures for initiating criminal prosecutions. Article I, section 11 of the Alaska Constitution states: "In all criminal prosecutions, the accused shall have the right to a speedy and public trial . . . ." This language is almost identical to the speedy trial clause in the Sixth Amendment to the United States Constitution.

The speedy trial right has its origins in English law. Sir Edward Coke wrote that "the innocent shall not be worn and wasted by long imprisonment, but . . . speedily come to his trial."[26] As this indicates, the core evil that the right was originally designed to prevent was lengthy pretrial incarceration. But modern cases have recognized that the right has broader purposes. Inordinate delay, regardless of incarceration, may impair a defendant's ability to prepare an effective defense.[27] And regardless of prejudice in attempting to defend on the merits, long delay may "seriously

---

[25] *State v. Hodari*, 996 P.2d 1230, 1232 (Alaska 2000).

[26] 1 SIR EDWARD COKE, SECOND PART OF THE INSTITUTES OF THE LAWS OF ENGLAND 315 (E. & R. Brooke eds. 1797) (1642), *quoted in Betterman v. Montana*, 578 U.S. ___, 136 S. Ct. 1609, 1614 (2016).

[27] *Barker v. Wingo*, 407 U.S. 514, 532 (1972) (identifying "the most serious" interest that the speedy trial right protects as being the limits the right places on "the possibility that the defense will be impaired"); *United States v. Marion*, 404 U.S. 307, 320-21 (1971) ("Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself.").

interfere with [a] defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family[,] and his friends."[28]

There are other legal protections against undue delay in bringing criminal charges to trial. Alaska Criminal Rule 45 requires a trial within 120 days from the date a charging document is served on a defendant, subject to defined excluded periods. This rule, promulgated in 1971, has sharply reduced the number of constitutional speedy trial claims asserted in our courts, as the proscriptions of Rule 45 are generally narrower than the limits of the constitutional speedy trial right.[29] Statutes of limitations also provide a limit beyond which the law irrebuttably presumes that a defendant cannot receive a fair trial.[30] And lengthy pre-accusation delay may result in a deprivation of due process.[31]

All of these protections have limits. They are not necessarily congruent with each other, nor does any one of them fully protect against undue delay.[32] The ultimate limits on delay — statutes of limitations — are tolled when an "indictment is

---

[28]     *See Marion*, 404 U.S. at 320; *see also Barker*, 407 U.S. at 537-38 (White, J., concurring).

[29]     *Snyder v. State*, 524 P.2d 661, 664 (Alaska 1974) (noting that Rule 45 does not define the outer limits of Alaska's constitutional right to a speedy trial).

[30]     *Marion*, 404 U.S. at 321.

[31]     *Id.* at 324 (due process requires dismissal of an indictment if defendant shows that pre-indictment delay caused substantial prejudice to defendant's right to a fair trial and delay was an intentional means of gaining tactical advantage over the accused).

[32]     *See Marks v. State*, 496 P.2d 66, 68 (Alaska 1972) (statute of limitations "does not fully define . . . rights with respect to the events occurring prior to indictment" (quoting *Marion*, 404 U.S. at 324)).

found" or an "information or complaint is instituted."[33]  Further, there is no limitation period for many serious crimes,[34] including as of 2007, cases of felony sexual abuse of a minor;[35] for most other serious crimes the period is a lengthy ten years.[36]  Meanwhile, a defendant asserting a due process claim of pre-accusation delay must prove both unreasonable delay and actual prejudice.[37]  For a state constitutional speedy trial violation, under the analysis we use, proof of actual prejudice is not always required.[38]  But the constitutional speedy trial right utilizes an ad hoc and imprecise balancing test,[39] and it does not attach until the defendant becomes an "accused,"[40] which is when the defendant is either arrested or formally charged.[41]  The other protection against post-accusation delay, Rule 45, contains well-defined standards, but it does not begin to run until a defendant is served with the charging document.[42]

---

[33]     AS 12.10.010(b).

[34]     AS 12.10.010(a).

[35]     AS 12.10.010(a)(3).

[36]     AS 12.10.010(b)(1).

[37]     *See State v. Mouser*, 806 P.2d 330, 336 (Alaska App. 1991) (citing *York v. State*, 757 P.2d 68, 70 (Alaska App. 1988)).

[38]     *Id.* at 338.

[39]     *Id.* at 340 (adopting the *Barker* test).

[40]     Alaska Const., art. 1, § 11.

[41]     *Yarbor v. State*, 546 P.2d 564, 567 (Alaska 1976).

[42]     Alaska R. Crim. P. 45(c)(1).

**B.** **The Criminal Information Was A Formal Charge That Started The Speedy Trial Clock.**

The first question in this case is when a defendant is "formally accused" for purposes of starting the speedy trial clock under the Alaska Constitution. Specifically, this case concerns whether the filing of a criminal information triggers the speedy trial right.

In Alaska the initial pleading in a criminal case may be an information, a complaint, or an indictment. All are charging documents with formal requirements prescribed by rule.[43] All may charge either misdemeanors or felonies. But felony charges initiated by a complaint or information are generally not the final pleading required before a defendant can be brought to trial. For that, an indictment is necessary unless the defendant waives an indictment, in which case the trial may proceed based on an information.[44] Informations and complaints are generally similar. The main differences are that informations must be signed by the prosecuting attorney and complaints need not be,[45] and complaints can never serve alone as the basis for a felony prosecution, even if an indictment is waived, while informations can.[46] The filing of a complaint or information sets in motion a litigation process described in Alaska Criminal Rules 3, 4, 5.1, 7, and 9. But the rules do not indicate how the litigation process aligns with the state constitutional right to a speedy trial.

The State argues that the right to a speedy trial in cases where a defendant has not been first arrested should not attach until a charging document has been filed that

---

[43] *See* Alaska R. Crim. P. 3 (complaint), 7 (indictment and information).

[44] Alaska R. Crim. P. 7; AS 12.80.020.

[45] Alaska R. Crim. P. 3, 7.

[46] Alaska R. Crim. P. 7.

is sufficient to compel a defendant to stand trial. Because an information is not a sufficient pleading to compel a person charged with a felony to stand trial unless the person waives indictment, the State contends that the speedy trial time did not begin to run in this case until Wright was arrested in September of 2004. By contrast, Wright argues that the speedy trial right attaches in felony cases when an information is filed and therefore the speedy trial time in this case began to run when the information was filed in November of 1999.

Both positions find substantial support in the case law of other jurisdictions.[47] Our case law has also considered the issue. In *Yarbor v. State*, we stated that the speedy trial time starts when the defendant "becomes formally accused — that is, the subject of a filed complaint or an arrest."[48] The State asks us to revisit this statement from *Yarbor*.

---

[47]     *Compare, e.g.*, *United States v. Madden*, 682 F.3d 920, 930 (10th Cir. 2012) ("The general rule is that the [federal] speedy trial right attaches when the defendant is arrested or indicted, depending on which comes first." (quoting *United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995))); *United States v. Dowdell*, 595 F.3d 50, 61 (1st Cir. 2010) (same); *United States v. Battis*, 589 F.3d 673, 678 (3rd Cir. 2009) (same); *People v. Martinez*, 996 P.2d 32, 41 (Cal. 2000) (felony complaint does not trigger federal speedy trial right); *and People v. Mitchell*, 825 N.E.2d 1241, 1243-45 (Ill. App. 2005) (felony complaint does not trigger state or federal speedy trial right), *with Scherling v. Superior Court*, 585 P.2d 219, 225 (Cal. 1978) (en banc) (state speedy trial protections attach after a complaint has been filed); *Jacobson v. Winter*, 415 P.2d 297, 300 (Idaho 1966) (state speedy trial right attaches when a criminal complaint is filed); *State v. Larson*, 623 P.2d 954, 957-58 (Mont. 1981) (state and federal speedy trial guarantee "is activated . . . by arrest, the filing of a complaint, or by indictment or information"); *People v. White*, 298 N.E.2d 659, 662 (N.Y. 1973) (state and federal speedy trial right attaches by filing of felony information or complaint, detainer warrant, or indictment); *State v. Selvage*, 687 N.E.2d 433, 436 (Ohio 1997) (filing of criminal complaint triggered speedy trial inquiry); *and State v. Lemay*, 455 N.W.2d 233, 236 (Wis. 1990) (speedy trial right attaches when complaint and warrant are issued).

[48]     546 P.2d 564, 567 (Alaska 1976).

The criminal conduct in *Yarbor*, lewd and lascivious acts toward a child, took place in August 1973.[49] The police investigation ended ten days later, and the district attorney's office completed its review of the case in December 1973, when it notified the victim's mother that a criminal complaint was ready for her signature.[50] But she did not sign the complaint until March 1974.[51] Yarbor was served two days later, but not arrested.[52] He was indicted in April 1974 and tried in June 1974.[53] On appeal Yarbor challenged the delay in commencing prosecution on speedy trial grounds, arguing that the right to a speedy trial attached when the State acquired sufficient evidence to charge him.[54] The State argued that the speedy trial right should not attach prior to "accusation," a term that it defined as "that point in time when a person is officially charged with the

---

[49]   *Id.* at 565.

[50]   *Id.*

[51]   *Id.* at 566.

[52]   *Id.*

[53]   Brief for Appellee at 3, 5, *Yarbor*, 546 P.2d 564 (No. 2397).

[54]   He relied on a law journal article that stated that the speedy trial right would begin "from the time the defendant is arrested, from the time of his initial arraignment, or from the time the charge is placed against the accused, whichever is first" unless the defendant could prove that the State "had sufficient evidence . . . to prosecute him prior to the date on which charges were formally brought," subject to exceptions if the delay was reasonably necessary and did not prejudice the accused in the presentation of his defense. Mark I. Steinberg, Comment, *Right to Speedy Trial: Maintaining a Proper Balance between the Interests of Society and the Rights of the Accused*, 4 UCLA ALASKA L. REV. 242, 259-60 (1974), *cited in* Brief for Appellant at 13-14, *Yarbor*, 546 P.2d 564 (No. 2397).

commission of a crime either by arrest, with or without a warrant, complaint, information or indictment, whichever occurs first."[55]

We rejected Yarbor's contention on several grounds. We noted that the United States Supreme Court in *United States v. Marion*[56] had rejected a similar argument and held instead that the right to a speedy trial does not attach until the defendant has been "formally accused."[57] We also observed that Yarbor's proposed rule would be difficult to administer, and might have adverse effects because it would create incentives to bring charges too hastily.[58] We concluded our discussion of the speedy trial claim with the following language:

> For these reasons, we now join our sister states in holding that the right to a speedy trial does not attach before the defendant becomes formally accused — that is, the subject of a filed complaint or arrest.[59]

The State now contends that the quoted statement from *Yarbor* is dictum rather than a holding, and therefore has limited precedential effect. The State also argues that even if the statement is a holding, it should be overruled because the criteria for

---

[55]     *See* Brief for Appellee at 8 n.1, *Yarbor*, 546 P.2d 564 (No. 2397). The State went on to note that "[t]he point of referrence [sic] is the same as that employed in Rule 45(c)(1), Alaska Rules of Criminal Procedure, to determine the time from which the 120 day period for trial under that rule begins running." *Id.* At that time Rule 45(c)(1) provided that speedy trial time would begin to run "[f]rom the date the defendant is arrested, initially arraigned, or from the date the charge (complaint, indictment, or information) is served upon the defendant, whichever is first." *Id.* at v.

[56]     404 U.S. 307, 321-22 (1971).

[57]     *Yarbor*, 546 P.2d at 566 (citing *Marion*, 404 U.S. at 321-22).

[58]     *Id.*

[59]     *Id.* at 567.

overruling a holding are satisfied in this case.[60] Wright counters that the statement is a holding and therefore must be followed because the grounds for overruling a holding are not met. Wright also contends that the statement is consistent with substantial authority and furthers the purposes underlying the speedy trial guarantee.

We find it unnecessary to resolve the question of whether the *Yarbor* statement — that a defendant becomes formally accused when a complaint is filed — is a holding or dictum. Instead, we conclude today that a defendant becomes formally accused for speedy trial purposes under the Alaska Constitution not just upon indictment or arrest but also when the State files an information charging the defendant with a crime.

We reach this conclusion because the filing of an information marks the beginning of litigation against a defendant. An information is a formal document with prescribed contents.[61] It must include the name of the defendant, the statute the defendant is charged with violating, and a concise and definite written statement of the essential facts constituting the crime.[62] An information must also bear the signature of the prosecuting attorney.[63] It is a public document, available for view by anyone in the office of the clerk of court. When an information is filed, the title of the charges, a citation to the statutes on which the charges are based, and the defendant's name are

---

[60] "We overrule a prior decision only when we are 'clearly convinced that (1) a decision was originally erroneous or no longer sound because of changed conditions; and (2) more good than harm would result from overruling it.' " *Charles v. State*, 326 P.3d 978, 983 (Alaska 2014) (quoting *Native Vill. of Tununak v. State, Dep't of Health & Soc. Servs, Office of Children's Servs.*, 303 P.3d 431, 447 (Alaska 2013)).

[61] Alaska R. Crim. P. 7.

[62] *Id.*

[63] *Id.*

promptly entered in the CourtView database, and thus become viewable by anyone with access to the internet. When the prosecutor's office files an information it "clearly manifest[s] its decision to prosecute."[64] And the filing of an information is sufficient to toll the statute of limitations on a criminal charge.[65]

When an information is filed the court must either issue a warrant of arrest or a summons requiring the defendant to appear in court at a specified time.[66] At the first appearance the judge treats a summoned defendant much like an arrested defendant. The judge informs the defendant of the charges and of any affidavit filed with it and makes sure the defendant has copies.[67] The judge also informs the defendant of his or her right to counsel, the potential penalties the defendant faces, and the defendant's right to remain silent.[68] If the defendant desires appointed counsel, the judge proceeds to determine the defendant's eligibility by reviewing his or her financial status, and if the defendant is eligible, appoints an attorney.[69] The judge also establishes the conditions of release applicable to the defendant.[70] In felony cases, the judge informs the defendant of his or her right to a preliminary hearing unless the defendant waives this right or consents to

---

[64] *State v. Mouser*, 806 P.2d 330, 339 (Alaska App. 1991).

[65] AS 12.10.010(b).

[66] Alaska R. Crim P. 9(a). *See also* Alaska R. Crim. P. 4(a) (requiring a judge to find probable cause and issue a warrant or summons upon complaints).

[67] Alaska R. Crim. P. 5(c)(1)–(2).

[68] Alaska R. Crim. P. 5(c)(3)–(4).

[69] Alaska R. Crim. P. 5(a)(2)(E)(iii), 5(c)(3).

[70] Alaska R. Crim. P. 5(c)(5).

the filing of an information in superior court.[71]  If there is a waiver or consent the judge "shall forthwith hold the defendant to answer in the superior court."[72]  If not, the judge schedules a preliminary hearing, which must be held within 20 days of the initial appearance.[73]

The preliminary hearing is a trial in miniature.  The State must present evidence in support of its case and the defense may present evidence.[74]  All witnesses are subject to cross examination[75] and the defendant has the right to counsel.[76]  If the judge determines there is no probable cause the defendant is discharged,[77] but if probable cause is found to exist the judge enters an order holding the defendant to answer and establishes conditions of release.[78]

All these actions and proceedings may come before an indictment.  We believe that it cannot reasonably be said that a defendant who is a party to them has not been formally accused.

---

[71]     Alaska R. Crim. P. 5(e)(2). However, even when a defendant has not waived the right to a preliminary hearing, a preliminary hearing need not be provided if an indictment has already been returned on the same charges.  *Martinez v. State*, 423 P.2d 700, 712 (Alaska 1967).

[72]     Alaska R. Crim P. 5(e)(3).

[73]     Alaska R. Crim. P. 5(e)(4).

[74]     Alaska R. Crim. P. 5.1(b)–(c).

[75]     *Id*.

[76]     Alaska R. Crim. P. 5.1(a).

[77]     Alaska R. Crim. P. 5.1(h).

[78]     Alaska R. Crim. P. 5.1(I).

Further, the text of the Alaska Constitution suggests that the term "accused" applies at pre-indictment stages. Several of the rights addressed at the first appearance described above — e.g., the right to be informed of charges and to counsel — are rights secured by the second sentence of article 1, section 11 of the Alaska Constitution.[79] A charged person thus becomes an "accused" for the purposes of these rights after an information is filed and need not await an indictment before he or she is so considered. There is no indication that the first sentence of section 11 embraces a different meaning of "accused" than the second sentence.[80]

Moreover, the text of article 1, section 8 uses the term "accused" in a sense that can only precede an indictment. That section states in part:

> Grand Jury — No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . . *Indictment may be waived by*

---

[79] Article 1, section 11 of the Alaska Constitution provides:

Rights of Accused — In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve, except that the legislature may provide for a jury of not more than twelve nor less than six in courts not of record. The accused is entitled to be informed of the nature and cause of the accusation; to be released on bail, except for capital offenses when the proof is evident or the presumption great; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

[80] We recognize, of course, that each of the enumerated rights under article 1, section 11 can have different activation and termination points. *See State v. Wassillie*, 606 P.2d 1279, 1282 (Alaska 1980) (finding that the constitutional right to bail terminates upon conviction, but rejecting the argument that each of the rights in article 1, section 11 must terminate at the same point).

*the accused. In that case the prosecution shall be by information.*[81]

If an "accused" can waive an indictment, it is not the indictment that confers "accused" status on a defendant. Thus, for defendants who have not been arrested, the term logically attaches when an information is filed against them.[82]

We believe that the purposes of the speedy trial right are best secured when the speedy trial clock begins with the filing of an information. As we observed above,[83] the purpose of the speedy trial guarantee is to prevent lengthy pretrial imprisonment and other adverse impacts of delay. Given the question in this case, incarceration is not a factor since it is undisputed that an arrest would trigger the attachment of speedy trial rights. But a long delay, regardless of incarceration, may impair a defendant's ability to prepare an effective defense, disrupt a defendant's employment, drain his or her financial resources, circumscribe his or her associations, subject the defendant to public shame, and create anxiety in the defendant and his or her family and friends.[84] These interests come into play as readily with the filing of an information as with the return of a grand jury indictment. A holding that speedy trial rights do not attach until an indictment issues potentially leaves a long period when a defendant is publicly accused by an information, suffers the detriments meant to be protected against by the speedy trial guarantee, but does not receive its protection.

---

[81] Alaska Const. art 1, § 8 (emphasis added).

[82] Alternatively, the attaching event might be when the complaint or information is served, as in Alaska R. Crim. P. 45(c)(1).

[83] *See supra* Section IV.A.

[84] *United States v. Marion*, 404 U.S. 307, 320 (1971).

The fact that pending charges are now available on the internet in searchable form magnifies their potential for harm. Such broad publicity, especially when the charges are of a heinous nature, can effect a near banishment of the person charged from certain lines of work and certain sectors of society, and also increases the potential that charges may be filed or maintained for vindictive or otherwise improper purposes.

As already noted, a number of other jurisdictions are in accord with the view that the filing of a complaint or information rather than an indictment will start the speedy trial clock.[85] A good discussion of the reasons supporting this view is contained in *Commonwealth v. Butler*. There, the Massachusetts Supreme Judicial Court reached a conclusion similar to ours for similar reasons, stressing especially the detriments that can flow from public charges.[86] In *Butler*, the court held that a defendant's right to a speedy trial under the Massachusetts Constitution "attaches when a criminal complaint issues."[87] "Therefore, arrest, indictment, or a criminal complaint issued pursuant to Massachusetts law, whichever comes first, will start the speedy trial clock."[88] Moreover, the Massachusetts speedy trial right "does not distinguish between the types of cases, (misdemeanor or felony; within the district or superior court) to which the right to a

---

[85]    *See supra* note 47. A recent law review article lists ten states, including Alaska, that either consider a complaint or information to be an accusation for speedy trial purposes or, while not specifically addressing the question, contain language in their case law that so suggests. Mikel Steinfeld, *Rethinking the Point of Accusation: How the Arizona Court of Appeals Erred in* State v. Medina, 7 PHOENIX L. REV. 329, 354-55 (2013).

[86]    985 N.E.2d 377, 383 (Mass. 2013).

[87]    *Id.*

[88]    *Id.*

speedy trial attaches."[89]   The court explained that "[t]he constitutional right to a speedy trial attaches because the subject of a criminal complaint is undoubtedly an 'accused,' and is not merely in 'the pre-accusation period when a police investigation is ongoing.' "[90]   Observing that a "criminal complaint is a formal charging document in Massachusetts," the court stated that "[t]he fact that a complaint may be followed by an indictment . . . does not render a complaint any less of a formal accusation."[91]   Finally, the court emphasized, as we do in the present case, that the public aspect of the charge is of primary importance: "Of perhaps greatest significance, the subject of a criminal complaint typically faces the same 'anxiety, concern, economic debilitation, public scorn and restraint on liberty' that the right to a speedy trial is intended to guard against."[92] The court determined that "no logical conclusion can be reached other than that the time within which an accused is to be secured in his right to a speedy trial must be computed from the time the complaint is filed against him."[93]

At stake in the present case is whether the delay between an information and an arrest should be assessed under the due process standard for pre-accusation delay or the speedy trial standard applicable to post-accusation delay.   Under the due process standard, a defendant has the burden of proving both that the delay was unjustified and that the defendant suffered actual prejudice.[94]   Under the speedy trial standard, if the

---

[89]     *Id*.

[90]     *Id*. (quoting *Commonwealth v. Gove*, 320 N.E.2d 900, 905 (Mass. 1974)).

[91]     *Id.*

[92]     *Id.* (quoting *Gove*, 320 N.E.2d at 907).

[93]     *Id.* (quoting *Jacobson v. Winter*, 415 P.2d 297, 300 (Idaho 1966)).

[94]     *State v. Mouser*, 806 P.2d 330, 336 (Alaska App. 1991).

defendant can show a delay of sufficient duration to be presumptively prejudicial, the four-factor balancing test is triggered.[95] Under this test the State has the burden of proving that the justification for the delay is valid[96] and prejudice may be presumed rather than proven when other factors weigh heavily against the State.[97] It is obvious that in speedy trial cases a heavier burden is placed on the State, and a lighter one on the defendant, than in cases of pre-accusation delay. This differential is justified because incarceration and the personal disruptions that flow from being publicly charged are normally not present in pre-accusation cases, while the possibility of prejudice from delay may be present in both.[98] In addition, an information manifests the State's decision to go forward with prosecution, whereas at the pre-accusation stage there may be uncertainty as to whether there will even be litigation.[99] When the State files an information, the State has placed the accused under a cloud of suspicion. At that point it is appropriate to employ the more demanding speedy trial standard. It imposes an incentive on the State to bring the accused to trial promptly and protects interests of the accused, placed at risk by the filing of the information, that are not well protected by the due process standard.

---

[95] *Barker v. Wingo*, 407 U.S. 514, 531 (1972).

[96] *Id.*; *McNelly v. Blanas*, 336 F.3d 822, 827 (9th Cir. 2003).

[97] *Mouser*, 806 P.2d at 342.

[98] *United States v. Marion*, 404 U.S. 307, 321-22 (1971).

[99] *Mouser*, 806 P.2d at 339.

For these reasons, we conclude that speedy trial time begins to run with the filing of an information.[100] Accordingly, Wright's constitutional speedy trial clock started in November 1999 when the State filed a criminal information against him.

## C. The Superior Court Did Not Err In Placing Primary Responsibility For The Delay With Wright.

We turn now to the question of whether the superior court correctly decided that Wright bore most of the responsibility for the pre-arrest delay. This question requires an evaluation of the trial court's factual findings on the reasons for delay, which we review for clear error.[101] But we review de novo the superior court's legal conclusion that Wright failed to establish a violation of his constitutional right to a speedy trial.[102]

---

[100]    We do not decide whether a complaint filed by a police officer or private person would also mark the attachment of the speedy trial right, as that question is not presented in this case. There may be sufficient reasons not to start the time in such cases; such complaints may, for instance, be filed prematurely, at a time when further investigation is necessary and before the prosecutor has decided that prosecution is warranted. But a complaint filed with the assistance of the prosecutor — as in *Yarbor* — would seem to be indistinguishable from an information for speedy trial purposes.

[101]    *See Lentine v. State*, 282 P.3d 369, 375-76 (Alaska 2012) (citing *Crowley v. State, Dep't of Health & Soc. Servs.*, 253 P.3d 1226, 1229 (Alaska 2011)); *see also Doggett v. United States*, 505 U.S. 647, 652 (1992) (reviewing the trial court's determinations as to the reasons for delay "with considerable deference").

[102]    *Cf. Kodiak Island Borough v. Large*, 622 P.2d 440, 447 (Alaska 1981) (reviewing de novo "the legal consequences of undisputed occurrences"); *Meyer v. State*, 368 P.3d 613, 615 (Alaska App. 2016); *see also United States v. Velasquez*, 749 F.3d 161, 174 (3rd Cir. 2014) (reviewing de novo the legal conclusion about whether defendant established violation of constitutional right to speedy trial, but applying clear error to the underlying factual findings); *United States v. Robinson*, 455 F.3d 602, 607-08 (6th Cir. 2006) (same).

In analyzing Wright's speedy trial claim the superior court followed the four-factor balancing approach embraced by the Supreme Court of the United States in *Barker v. Wingo*[103] and adopted by the Alaska Court of Appeals in *State v. Mouser*.[104] We agree that this test presents an appropriate analytical structure for evaluating speedy trial claims brought under the Alaska Constitution. The four factors, as already noted, are: (1) length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his or her speedy trial right, and (4) the prejudice to the defendant.[105] No one of these factors is a necessary or sufficient condition to finding a speedy trial violation.[106] Rather, the factors are related and must be considered together with other relevant circumstances.[107]

The first factor, the length of delay, bears further explanation. It is both a triggering mechanism that activates the balancing test and a relevant factor for consideration when the balancing test is used.[108] Until there is a delay that is sufficiently lengthy that it may be said to be presumptively prejudicial, there is no need to conduct

---

[103]    407 U.S. 514, 530 (1972).

[104]    806 P.2d at 340.

[105]    *Barker*, 407 U.S. at 530.

[106]    *Id.* at 533.

[107]    *Id.*

[108]    *Id.* at 530.

the balancing test.[109]  In the present case, the superior court found the nearly five-year pre-arrest delay to be presumptively prejudicial,[110] thus triggering the balancing test.

While no one disputes the first factor in this case, the superior court and the court of appeals disagreed as to the second factor. When considering the reasons for the delay, the superior court stated that "part of the reason for the delay is the State's negligence in failing to issue an extraditable warrant for Wright's arrest.  Had such a warrant been issued, the State would likely have located Wright when he applied for work at the nuclear facilities in Arkansas in 2000 which required security clearance."[111] But apart from the State's failure to obtain an extraditable warrant the court did not find other negligent conduct on the part of the State.  The court focused largely on Investigator Josten, finding that her conduct was reasonable, in part because by September of 1999 she was no longer assigned to the case.[112]  The court stated:

> Wright's argument that Josten could have located Wright by checking Palmer court records, Juneau court records, and Vital Statistics files places an unreasonable burden on law enforcement.  By the time an arrest warrant was issued for Wright in September 1999, Josten was off the case and assigned different duties.  She did what any reasonable officer would do under the circumstances and that is to periodically check with various police sources to see if Wright had surfaced.  A more thorough investigation of a

---

[109]    *Id.*

[110]    *See Rutherford v. State*, 486 P.2d 946, 952 (Alaska 1971) (14-month delay presumed prejudicial); *State v. Mouser*, 806 P.2d 330, 340 (Alaska App. 1991) ("[U]nexplained delays of fourteen months or more [are] presumptively prejudicial.").

[111]    Appendix at 6.

[112]    Appendix at 7.

defendant's whereabouts cannot be expected of a police officer no longer having responsibility for the case.[113]

The court also concluded that "contacting Wright at his brother's without an extraditable warrant would only have alerted Wright that police were searching for him."[114]

The superior court concluded that the State's negligence in failing to obtain an extraditable warrant as a reason for delay was greatly outweighed by Wright's departure from the state when he realized he was under investigation. The court wrote that Wright's departure "made it impossible to comply with the right to speedy trial" and added a footnote stating that "defendant's causes for delay do not count towards determining speedy trial violation."[115] Earlier in its decision, when discussing Wright's due process claim, the court also placed primary responsibility on Wright for the delay:

> Wright voluntarily left the state once he realized he was under investigation for alleged sexual abuse of a minor. Wright moved from state to state and job to job until authorities found him in Minnesota. Wright was promptly extradited once located. The delay in indicting Wright was largely attributable to his flight from the state and his frequent moves to different states to obtain employment.[116]

The court of appeals interpreted the superior court's decision as finding Wright only partially at fault for the delay and found even this conclusion to be erroneous.[117] Instead, the court of appeals concluded, none of the responsibility for the

---

[113]    Appendix at 6-7.

[114]    Appendix at 7.

[115]    Appendix at 6.

[116]    Appendix at 4.

[117]    *Wright v. State*, 347 P.3d 1000, 1008-09 (Alaska App. 2015).

delay should have been attributed to Wright.[118] The court accepted Wright's argument that "he was unaware that charges had been filed" and "that none of his actions were directed at avoiding apprehension."[119] The court also noted that the State had conceded that after Wright left the state he "was not hiding out, and the State had avenues of locating him that likely would have produced him within a brief period."[120] The court of appeals also wrote "that although Wright moved frequently for work, he maintained an Arkansas driver's license and a physical address that other Alaska state agencies used to communicate with him. Wright also repeatedly passed intensive security clearances that would have uncovered the arrest warrant if the information had been entered into the [National Crime Information Center] data base."[121]

But the court of appeals' conclusion that the trial court attributed only "partial" blame to Wright for the delay substantially understates the trial court's assessment of the relative responsibility of the parties. Initially, in the inquiry as to the due process clause, the trial court found that the responsibility "largely" fell on Wright: "[t]he delay in indicting Wright was largely attributable to his flight from the state and his frequent moves to different states to obtain employment."[122] When weighing the responsibility-for-delay factor in its speedy trial analysis, the trial court found against Wright even more heavily, concluding that Wright's flight from the state made it impossible for the State to comply with the speedy trial right.

---

[118] *Id.*

[119] *Id.* at 1008.

[120] *Id.*

[121] *Id.* at 1009.

[122] Appendix at 4.

Wright's flight from the state did not make it literally impossible for the State to apprehend him. The trial court recognized this when it stated that an extraditable warrant would likely have been effective. We therefore understand the trial court's finding of impossibility not in its literal sense, but as a means of expressing the much greater responsibility that Wright should bear for the pre-arrest delay.

As so understood, we agree with the trial court. As between an individual who takes flight to avoid prosecution and a government that is negligent in its efforts to apprehend him, the relative responsibility for the ensuing delay must weigh heavily against the individual. Many authorities illustrate this point.[123]

---

[123] The Sixth Circuit, in *Wilson v. Mitchell*, applied tort law principles to weigh the relative fault of the defendant and the state in causing a 22-year delay between the defendant's indictment and arrest. 250 F.3d 388, 395 (6th Cir. 2001). In analyzing the second *Barker* factor, the Sixth Circuit explained:

> Under general tort-law principles, an active tortfeasor is not entitled to either indemnity or contribution from a passive tortfeasor. . . . [U]nder our tort [law] analogy, because Wilson actively evaded discovery, and the state was, at worst, passive in its pursuit of him, we cannot attribute the primary responsibility for the delay to the state. Indeed, even if the police made mistakes in their search for Wilson, he is not entitled to relief on this ground so long as his active evasion "is more to blame for that delay."

*Id.* at 396 (quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992)). *See also United States v. Arceo*, 535 F.3d 679, 685-86 (7th Cir. 2008) (attributing "most of the blame for the delay" to the defendant, who fled the jurisdiction when he became "aware that criminal charges were forthcoming" and hid from authorities "in a calculated effort to avoid arrest and prosecution"); *People v. Hsu*, 85 Cal. Rptr. 3d 566, 572 (Cal. App. 2008) (explaining that a defendant's active evasion must be weighed more heavily than the state's failure to pursue the defendant diligently enough because to hold otherwise would "encourage[] defendants to become fugitives" (emphasis omitted)); *People v. Perez*, 279 Cal. Rptr. 915, 922 (Cal. App. 1991) ("[T]he prosecution cannot be held

(continued...)

The superior court's characterization of Wright's conduct as "flight from the State"[124] has evidentiary support and therefore is not clearly erroneous. As Wright was leaving the state he left the following note to a friend:

> I don't know what's going on but I got a bad feeling, time to travel while I can. Note to trust no one, I won't call for a long time and don't know where I'm going yet. Have to stick to myself and stay away from family and friends till my attorney knows what's happening and how to deal with it. So I act like a termite for a while and work where I can to pay lawyer and survive.

The court of appeals stressed that after Wright left the state he was living and working under his own name and that the State had means of locating Wright that could readily have been successful.[125] But these observations, in our view, do not undercut the superior court's determination that the primary responsibility for the delay was Wright's act of fleeing the state. It is likely not a simple matter to change one's identity and yet remain eligible for well-paying construction jobs. Wright apparently hoped that by leaving the state and, as he put it, "acting like a termite," his absence would create sufficient difficulties for the State so that he could escape prosecution. This strategy worked for about five years, and the superior court was right to reject Wright's

---

[123](...continued)
accountable for delay caused by defendant's unilateral action in fleeing the jurisdiction in order to avoid prosecution.").

[124]    Appendix at 4.

[125]    *Wright*, 347 P.3d at 1009.

attempt to blame the State for its success.[126]  We therefore affirm the superior court's determination that Wright bore primary responsibility for the delay.

This means that the superior court's determination that Wright's speedy trial claim was without merit also must be affirmed.  Wright was primarily responsible for the lengthy delay, and the delay did not prejudice him in preparing his defense, so the first, second, and fourth factors of the *Barker* balancing test weigh heavily against Wright.  And any dispute as to the third factor — whether Wright should be faulted for failing to assert his speedy trial right or whether his non-assertion is irrelevant under the circumstances of this case — is moot because that factor cannot be favorable to Wright; at best it is neutral.

## V.    CONCLUSION

For these reasons we conclude that the superior court correctly decided that Wright was not denied his right to a speedy trial under the Alaska Constitution.  We therefore REVERSE the decision of the court of appeals and REMAND this case with directions to AFFIRM the decision of the superior court.

---

[126]    We note that we find that the focus of the trial court solely on Investigator Josten's actions after September 1999 was too narrow.  The focus should have been on whether the police as a whole were negligent.  There is no suggestion in the record that once Josten was off the case another officer was assigned to pursue it.  But even if we assume that the State was negligent in failing to further investigate Wright's whereabouts, that negligence, like the negligence of the State in failing to issue an extraditable warrant, would clearly be secondary to Wright's flight as an assignable cause for delay.

BOLGER, Justice, concurring.

I agree with the court's opinion that the State did not violate Sean Wright's right to a speedy trial. But I disagree with the court's conclusion that a prosecutor's information is a formal charge sufficient to initiate a felony prosecution within the meaning of this constitutional guarantee. The Alaska Constitution requires a grand jury indictment to initiate a felony prosecution. Therefore, until the defendant has been arrested or indicted, we should apply the due process test to assess preindictment delay.

## A. Alaska Law Requires The Grand Jury To Return An Indictment To Initiate Felony Charges.

The right to a speedy trial does not accrue until the defendant is arrested or formally charged.[1] A formal charge means a criminal charge that "alone gives 'the court jurisdiction to proceed to trial.' "[2] For example, the filing of a criminal complaint in a felony matter generally will not trigger the defendant's right to a speedy trial.[3] In the

---

[1]     5 WAYNE R. LAFAVE, ET. AL., CRIMINAL PROCEDURE § 18.1(c) (4th ed. Supp. 2016) (citing *United States v. Marion*, 404 U.S. 307 (1971)).

[2]     *Id.* (quoting *People v. Martinez*, 996 P.2d 32, 41 (Cal. 2000)); *see also United States v. MacDonald*, 456 U.S. 1, 10 (1982) (holding that speedy trial period did not commence because "there was no criminal prosecution pending on which [the defendant] could have been tried until the grand jury . . . returned the indictment"); *Martinez*, 996 P.2d at 41-42 ("[A] pleading does not constitute a 'formal charge' for purposes of attaching the federal Constitution's speedy trial right unless the pleading is a formal accusation upon which a defendant may be brought to trial in the court with jurisdiction over prosecution of the offenses alleged."); *State v. Gee*, 471 A.2d 712, 716 (Md. 1984) ("[T]he document consisting of a warrant of arrest and statement of charges on which the warrant is based . . . is a 'formal charge' in the contemplation of the speedy trial right *when a defendant is subject to be tried on that document*." (emphasis in original)).

[3]     *People v. Mitchell*, 825 N.E.2d 1241, 1243 (Ill. App. 2005) ("[E]ither an arrest or a *formal* accusation — and not merely *any* charging instrument — is needed to
(continued...)

majority of state jurisdictions that requires a grand jury indictment to initiate felony charges,[4] the speedy trial right does not accrue until arrest or indictment, whichever comes first.[5] This is also the rule in the federal courts, where the right to a grand jury for

**3**(...continued)
start the speedy-trial clock." (emphases in original)); *State v. Caffey*, 438 S.W.2d 167, 171 (Mo. 1969) ("The constitutional right to a speedy trial has no application until a criminal *prosecution* is commenced. The constitutional provisions invoked contemplate a pending charge and not merely a pending complaint, which represents a mere possibility that a criminal charge will be filed." (emphasis in original)).

**4** The 18 states that grant the right to a grand jury to those accused of serious crimes are Alabama, Alaska, Delaware, Georgia, Kentucky, Maine, Massachusetts, Mississippi, New Hampshire, New Jersey, New York, North Carolina, Ohio, South Carolina, Tennessee, Texas, Virginia, and West Virginia. 4 LAFAVE ET AL., *supra* note 1, § 15.1(d).

**5** *See Preston v. State*, 338 A.2d 562, 565 (Del. 1975) ("We hold . . . that the speedy trial guarantee of the Sixth Amendment does not attach at the time of the filing of a complaint and the issuance of an arrest warrant."); *Wooten v. State*, 426 S.E.2d 852, 855 (Ga. 1993) ("The Sixth Amendment does not guarantee a right to a speedy *arrest*. However, an inordinate delay between the time a crime is committed and the time a defendant is arrested or indicted may violate *due process* . . . ." (emphases in original)); *State v. Aguirre*, 670 A.2d 583, 585 (N.J. Super. App. Div. 1996) (distinguishing between speedy trial right and "claims under the Due Process Clause arising from undue pre-indictment or pre-arrest delay"); *State v. Allen*, 237 S.E.2d 64, 66 (S.C. 1977) ("Their right to a speedy trial attached . . . at the time the arrest warrants were served; and not . . . when the warrants were issued . . . ."); *State v. Utley*, 956 S.W.2d 489, 493 (Tenn. 1997) ("Like the other courts that follow the majority view, this Court has determined that a warrant alone does not trigger speedy trial analysis; to the contrary, a formal grand jury action or the actual restraints of an arrest are required."); *Rios v. State*, 718 S.W.2d 730, 732 (Tex. Crim. App. 1986) (defendant's statutory speedy trial right was not violated because although "a formal complaint was filed . . . , the purpose was to secure a felony arrest warrant from a justice of the peace sitting as a magistrate, not to constitute a charging instrument for trial of a felony offense in district court[,] . . . [and] a criminal action . . . did not commence until the indictment was filed in district court"); *State v.*
(continued...)

those accused of federal felonies is guaranteed by the Fifth Amendment.[6] As the United States Supreme Court has recognized, "when no indictment is outstanding, only the

---

**[5]**(...continued)

*Hinchman*, 591 S.E.2d 182, 187 (W. Va. 2003) ("[W]here there has been no arrest or indictment, the Sixth Amendment right to a speedy trial is not implicated[,]" [but when] the prosecution "may have substantially delayed the institution of criminal proceedings . . . the Fifth Amendment due process standard is utilized." (quoting *State v. Drachman*, 358 S.E.2d 603, 627 (W. Va. 1987))); *see also Goncalves v. Commonwealth*, 404 S.W.3d 180, 199 (Ky. 2013); *State v. Harper*, 613 A.2d 945, 946 n.1 (Me. 1992) (first citing *State v. Joubert*, 603 A.2d 861, 863 (Me. 1992); and then citing *State v. Cadman*, 476 A.2d 1148, 1151 n.4 (Me. 1984)); *State v. Philibotte*, 459 A.2d 275, 277 (N.H. 1983); *State v. Pippin*, 324 S.E.2d 900, 904 (N.C. App. 1985). *But see Ex parte Walker*, 928 So. 2d 259, 264 (Ala. 2005) ("[T]he length of delay is measured from the date of the indictment or the date of the *issuance of an arrest warrant — whichever is earlier . . . .*" (emphasis added) (quoting *Roberson v. State*, 864 So. 2d 379, 394 (Ala. Crim. App. 2002))); *Commonwealth v. Butler*, 985 N.E.2d 377, 383 (Mass. 2013); *People v. Taranovich*, 335 N.E.2d 303, 306 (N.Y. 1975); *State v. Selvage*, 687 N.E.2d 433, 435 (Ohio 1997).

**[6]** *See Butler v. Mitchell*, 815 F.3d 87, 89 (1st Cir. 2016) ("Under the Sixth Amendment . . . the speedy-trial right attached, and the count began, not when the complaint was issued, but when the . . . indictment was announced."); *United States v. Hicks*, 779 F.3d 1163, 1167 (10th Cir. 2015) ("A defendant's constitutional right to a speedy trial 'attaches when he is arrested or indicted on federal charges, whichever comes first.' " (quoting *United States v. Banks*, 761 F.3d 1163, 1181 (10th Cir. 2014))); *United States v. Claxton*, 766 F.3d 280, 294 (3d Cir. 2014); *United States v. Young*, 657 F.3d 408, 414 (6th Cir. 2011); *United States v. Jenkins-Watts*, 574 F.3d 950, 966 (8th Cir. 2009); *United States v. Knight*, 562 F.3d 1314, 1323 (11th Cir. 2009); *United States v. Uribe-Rios*, 558 F.3d 347, 358 n.8 (4th Cir. 2009); *United States v. Tchibassa*, 452 F.3d 918, 922 (D.C. Cir. 2006); *United States v. Bloom*, 865 F.2d 485, 491 (2d Cir. 1989); *see also Amos v. Thornton*, 646 F.3d 199, 206 (5th Cir. 2011) (applying the rule that the Sixth Amendment right "attaches at the time of arrest or indictment, whichever comes first" when analyzing charges for Mississippi, an indictment state (quoting *Nelson v. Hargett*, 989 F.2d 847, 851 (5th Cir. 1993))).

'*actual* restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections of the speedy trial provision of the Sixth Amendment.' "[7]

Alaska is one of the jurisdictions where an indictment is required to formally charge a criminal defendant with a felony. "In Alaska felony charges must be initiated by grand jury indictment unless the defendant waives indictment."[8] "This requirement ensures that a group of citizens will make an independent determination about the probability of the accused's guilt 'before the accused suffers any of the grave inconveniences which are apt to ensue upon the return of a felony indictment.' "[9]

The delegates at the Alaska Constitutional Convention considered and rejected the original Committee proposal, which would have allowed prosecutors the option of prosecuting by either information or indictment. Instead, the delegates voted in favor of an amendment that retained the indictment requirement, which is now enshrined in article I, section 8.[10] Accordingly, our court rules require that a felony

---

[7] *United States v. Loud Hawk*, 474 U.S. 302, 310 (1986) (omission in original) (emphasis in original) (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)).

[8] *Cameron v. State*, 171 P.3d 1154, 1156 (Alaska 2007); *see also* Alaska Const. art. I, § 8 ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . .").

[9] *Cameron*, 171 P.3d at 1156 (quoting *State v. Gieffels*, 554 P.2d 460, 465 (Alaska 1976)).

[10] *See generally* 2 Proceedings of the Alaska Constitutional Convention (PACC) 1322-37 (Jan. 6, 1956); Alaska Const. art. I, § 8. As the sponsor of the amendment explained,

> there isn't any question that each grand jury that sits returns some 'no true bills' . . . [which] means that somebody has been charged with a crime by the district attorney and the

(continued...)

charge "shall be prosecuted by indictment, unless indictment is waived."[11] Only non-felony offenses "may be prosecuted by [either] indictment or information."[12] If a felony indictment is waived, then "the prosecution shall be by information or complaint."[13]

In my opinion, the court's analysis is incomplete because of the lack of recognition of an important qualifier: the accused's right to a speedy trial in article I, section 11, applies only to a criminal prosecution. "In all *criminal prosecutions*, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve . . . ."[14] This term comes into play in the court's discussion of article I, section 8, the grand jury clause, which states in relevant part:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the armed forces in time

---

[10](...continued)
> district attorney . . . has presented all of his evidence to the grand jury and in spite of that the grand jury has said that there is no cause to hold this man for trial, and the man has been released without going through a trial to a regular jury. Certainly under those circumstances it can't be said that the grand jury serves no useful purpose. It serves a distinctly useful purpose.

2 PACC at 1327.

[11]    Alaska R. Crim. P. 7(a).

[12]    *Id.*

[13]    AS 12.80.020.

[14]    Alaska Const. art. I, § 11 (emphasis added); *cf.* United States v. MacDonald, 456 U.S. 1, 6 (1982) ("The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .' A literal reading of the Amendment suggests that this right attaches only when a formal criminal charge is instituted and a criminal prosecution begins.").

of war or public danger. Indictment may be waived by the accused. In that case *the prosecution* shall be by information.[15]

The court's opinion reasons that the statement that the indictment may be waived by "the accused" implies that a person may be an accused before an indictment.[16] But the opinion ignores the fact that the "prosecution" itself cannot begin until the grand jury has returned an indictment or the accused has waived the indictment. If we assume that this term has a similar meaning in these related sections, then the speedy trial right cannot attach until the formal felony prosecution begins — upon indictment or waiver.[17]

In the absence of a waiver, the information that the State filed to obtain a warrant for Wright was inadequate to initiate his formal prosecution for felony charges and insufficient to trigger his entitlement to a speedy trial.

**B.      The Authority The Court's Opinion Relies Upon Is Distinguishable**.

The court's opinion in the case at hand implies that we decided in *Yarbor v. State* that a defendant becomes formally accused upon the filing of a complaint.[18] In my opinion, this language is taken out of context. The *Yarbor* case establishes only that, contrary to the defendant's argument in that case, the right to a speedy trial does not attach "when the state has acquired sufficient evidence to charge an individual with a

---

[15]      Alaska Const. art. I, § 8 (emphasis added).

[16]      Op. at 19-21.

[17]      The court's description of "all [the] actions and proceedings [that] may come before an indictment" is not to the contrary. *See* Op. at 19. These procedures do not occur until a felony defendant actually appears in court — generally after an arrest, when the defendant's speedy trial rights have already attached.

[18]      Op. at 14 (discussing *Yarbor v. State*, 546 P.2d 564 (Alaska 1976)).

-38-                                              7200

crime."[19] And *Yarbor*'s statement that "we now join our sister states in holding that the right to a speedy trial does not attach before the defendant becomes formally accused"[20] cites at least three other opinions stating or implying that a pre-indictment complaint is insufficient to trigger the speedy trial guarantee.[21]

The court's opinion relies on *Commonwealth v. Butler*, a Massachusetts case.[22] But the *Butler* court interpreted the language of article 11 of the Declaration of Rights of the Massachusetts Constitution, which is much different from the text of the speedy trial rights in the Alaska and U.S. Constitutions:

> Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.[23]

---

[19]     *Yarbor*, 546 P.2d at 566-67.

[20]     *Id*. at 567 (footnotes omitted) (citations omitted).

[21]     For instance, in *People ex rel. Coca v. District Court*, the court held that the right to a speedy trial was not triggered by the filing of a complaint and issuance of a warrant, 530 P.2d 958, 959-60 (Colo. 1975) (en banc). *See also State v. Lee*, 519 P.2d 56, 60 (Ariz. 1974) ("We have held that the right to a speedy trial commences at the time the accused has been held to answer by a magistrate or after an indictment has been returned." (citations omitted)); *State v. Bessey*, 328 A.2d 807, 817 (Me. 1974) ("We observe, first, that the right to a speedy trial does *not* arise until criminal prosecution has begun and a defendant has become an 'accused.' Pre-indictment delay does not deny a defendant's Sixth Amendment right." (emphasis in original)).

[22]     Op. at 22-23 (discussing *Commonwealth v. Butler*, 985 N.E.2d 377 (Mass. 2013)).

[23]     Mass. Const. pt. 1, art. 11. In contrast, the Alaska and federal constitutions

(continued...)

The *Butler* court alluded to this difference in its analysis.[24]  The language of the Massachusetts provision is concerned with prompt administration of justice generally, rather than speedy criminal trials specifically.  This language could easily cover more stages than the criminal trial process, including pre-arrest and pre-indictment delays.

In a related proceeding, the First Circuit distinguished the *Butler* holding as "a rule of state constitutional law" and explained on the same facts that "[u]nder the Sixth Amendment . . . the speedy-trial right attached, and the count began, not when the complaint was issued, but when the 1999 indictment was announced."[25]  The First Circuit's conclusion is more persuasive, given that Alaska's speedy trial right closely resembles the text of the Sixth Amendment, not Massachusetts's article 11.

The court's opinion also cites *Scherling v. Superior Court* for the proposition that under the California Constitution "speedy trial protections attach after a complaint has been filed."[26]  This is a correct but incomplete statement.  The *Scherling* court goes on to clarify that the scope of that right changes based on the stage of the delay — and effectively describes a due process test when the delay occurs between the complaint and an indictment or arrest:

---

[23](...continued)
provide that "[i]n all criminal prosecutions, the accused shall [have or enjoy] the right to a speedy and public trial."  Alaska Const. art. I, § 11; U.S. Const. amend. VI.

[24]  "[A]rt. 11 does not distinguish between the types of cases . . . to which the right to a speedy trial attaches; it states that the right to a speedy trial applies to '[e]very subject of the [C]ommonwealth.' "  *Butler*, 985 N.E.2d at 383 (third and fourth alterations in original).

[25]  *Butler v. Mitchell*, 815 F.3d 87, 89 (1st Cir. 2016).  The court also rejected the defendant's invitation to apply the *Butler* court's reasoning to federal law.  *Id.* at 90.

[26]  Op. at 14 n.47 (citing *Scherling v. Superior Court*, 585 P.2d 219, 225 (Cal. 1978) (en banc)).

> Unlike federal law . . . this state has extended the [speedy trial] right to the pre-indictment and pre-arrest stage, holding that it attaches under article I, section 15, of our Constitution after a complaint has been filed. But the consequence of a violation depends upon the stage at which a violation of the right occurs. The right to a speedy trial following the filing of an indictment or information and the time limitations applicable thereto are set forth by statute and a violation of the statute is presumed to be prejudicial. *A violation at a prior stage depends upon a balancing of the prejudicial effect of the delay and the justification therefor.*[27]

For delays prior to the filing of an indictment or information, California thus applies the same test "regardless of whether [the] defendant's claim is based on a due process analysis or a right to a speedy trial not defined by statute."[28]

Finally, the court's opinion[29] cites *People v. White* for the proposition that the New York speedy trial right is "violated if there is an excessive delay between institution of the prosecution — whether by felony information or complaint, detainer warrant or indictment — and the trial."[30] But like the California court in *Scherling*, the New York court in *White* recognized that the speedy trial and due process rights may sometimes merge.[31] And later decisions reinforce that in New York, "the factors utilized

---

[27]    *Scherling*, 585 P.2d at 225–26 (emphasis added) (footnotes omitted) (citations omitted). Under the California Constitution, "[t]he defendant in a criminal cause has the right to a speedy public trial." Cal. Const. art. 1, § 15.

[28]    *Scherling*, 585 P.2d at 226.

[29]    Op. at 14 n.47.

[30]    *People v. White*, 298 N.E.2d 659, 662 (N.Y. 1973)).

[31]    *White*, 298 N.E.2d at 662 ("It may be that [the due process] doctrine has now been incorporated in the 'speedy trial' guarantee of the Sixth Amendment . . . but
(continued...)

to determine if a defendant's rights have been abridged are the same whether the right asserted is a speedy trial right or the due process right to prompt prosecution."[32] Accordingly — and in contrast to the Alaska rule we announced in *Yarbor* — New York's speedy trial right can apparently attach *before* arrest, information, indictment, or even a warrant or complaint — even from the time of the offense.[33]

C.    **The Speedy Trial Clause Does Not Apply To These Circumstances**.

When there has been no arrest or formal charge, the application of the speedy trial clause does not promote the purposes of that provision. The speedy trial

---

[31](...continued)
it is only of limited analytical importance whether the right is one of a 'speedy trial' or of 'due process of law.' " (quoting *People v. Winfrey*, 228 N.E.2d 808, 812 (N.Y. 1967))).

[32]    *People v. Vernace*, 756 N.E.2d 66, 67 (N.Y. 2001) (citing *People v. Staley*, 364 N.E.2d 1111, 1113 (N.Y. 1977)); *see also id.* ("In this State, 'we have never drawn a fine distinction between due process and speedy trial standards' when dealing with delays in prosecution." (quoting *People v. Singer*, 376 N.E.2d 179, 186 (N.Y. 1978))). These factors are "the extent of the delay," "the reasons for the delay, the nature of the underlying charge, whether there has been an extended period of pretrial incarceration, and whether there is any indication that the defense has been impaired by reason of the delay." *Id.* (citing *People v. Taranovich*, 335 N.E.2d 303, 306 (N.Y. 1975)).

[33]    *See Singer*, 376 N.E.2d at 185-86 ("[M]ore realistically, it could be said that [the defendant] was actually although not formally accused of the homicide . . . when he was confronted by the police with the crime scene photographs of the dead girl; informed they 'knew' that he did it, and went into a state of shock in response to the charge."); *Taranovich*, 335 N.E.2d at 307 ("[T]his defendant was not deprived of his constitutional right to a speedy trial. A one-year delay between the alleged occurrence of a crime and an indictment for a class C felony . . . in and of itself does not entitle a defendant to a dismissal of the indictment . . . ."); *People v. Wiggins*, 395 N.Y.S.3d 395, 399 (N.Y. App. Div. 2016) ("[T]he six-year delay between the shooting in 2008 and defendant's guilty plea in 2014 was 'extraordinary.' ") (applying *Taranovich* factors), *leave to appeal granted*, 74 N.E.3d 688 (N.Y. 2017).

clause is intended: "(1) to prevent harming the defendant by a weakening of his case as evidence and memories of witnesses grow stale with the passage of time; (2) to prevent prolonged pre-trial incarceration; and (3) to limit the infliction of anxiety upon the accused because of long-standing charges."[34] But there is nothing in the record indicating that Wright suffered any anxiety or public humiliation; indeed, he asserted that he was completely unaware that the State had obtained an arrest warrant.[35] Prior to Wright's arrest, he obviously did not suffer from incarceration; he was moving from job to job and state to state. And Wright did not contest the trial court's finding that he suffered no actual prejudice as a result of this delay.[36] So the purposes of the speedy trial clause do not apply to the period before Wright's arrest.

Moreover, these circumstances do not support the application of the test we generally apply to determine a speedy trial violation. This test considers the length of the delay, the reasons for the delay, any demand for trial by the accused, and prejudice to the defendant.[37] As the court of appeals noted, it would be unfair to consider the factor that Wright did not demand a speedy trial prior to his arrest because he was unaware that an information had been filed.[38] And even if Wright had demanded a speedy trial, the superior court would have been powerless to schedule one. A trial could not be

---

[34]     *Rutherford v. State*, 486 P.2d 946, 947 (Alaska 1971).

[35]     The court of appeals noted that Wright "was able to live freely and openly [prior to his arrest], unaffected by the anxiety, stress, and 'public obloquy' that [felony] charges might otherwise bring." *Wright v. State*, 347 P.3d 1000, 1007 (Alaska App. 2015).

[36]     *Id.* at 1006.

[37]     *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972).

[38]     *Wright*, 347 P.3d at 1009.

scheduled before Wright's arrest because there were no charges pending in a court with jurisdiction to bring him to trial.

The remaining factors in the speedy trial test focus on the length and reasons for the delay and the prejudice to the defendant. But we have another test that explicitly focuses on these factors — the due process test for preindictment delay.[39]

We applied the due process test to a case remarkably similar to Wright's in *State v. Gonzales*.[40] Similar to Wright, Gonzales became aware that the authorities were investigating him for sexual abuse of his girlfriend's ten-year-old daughter.[41] Similar to Wright, Gonzales left Alaska suddenly and did not return for many years.[42] Gonzales was not arrested until he returned to the state almost ten years later.[43] We recognized that the defendant's flight was a reasonable basis for the State to delay a grand jury indictment.[44] We therefore concluded that the resulting preindictment delay did not violate Gonzales's right to due process.[45]

I believe the same due process analysis should apply to Sean Wright. I would reverse the court of appeals' decision because a prosecutor's information in a felony case is not a formal charge for purposes of the speedy trial clause.

---

[39]     *State v. Gonzales*, 156 P.3d 407, 411-12 (Alaska 2007).

[40]     Under this test, "the defendant must prove both that the delay was not reasonable and that the defendant suffered actual prejudice from the delay." *Id.* at 411 (footnote omitted) (citing *State v. Mouser*, 806 P.2d 330, 336 (Alaska App. 1991)).

[41]     *Id*. at 409.

[42]     *Id*. at 409-10.

[43]     *Id*. at 410.

[44]     *Id.* at 412-15.

[45]     *Id.* at 415.

CARNEY, Justice, concurring in part and dissenting in part.

I concur in the court's conclusion that the filing of an information starts the speedy trial clock.

But I disagree with the court's conclusion that the superior court did not err in holding that the pretrial delay was Wright's fault. I am persuaded that the superior court clearly erred in so holding. And while I recognize that this court owes no deference to the court of appeals' decision in this matter, I believe that its opinion of the facts of the case and the impact those facts had upon the pretrial delay more accurately reflects what occurred.

Not only did the State concede that "Wright was not hiding out, and the State had avenues of locating him that likely would have produced him within a brief period,"[1] but after leaving Alaska Wright made no attempt to hide his whereabouts or his identity. On the contrary, he remained in touch with his wife, the mother of the young girl he abused. He returned to Alaska and stayed at her home, he called her, and he sent and received mail from her. While the Palmer District Attorney's office was working with the Alaska State Troopers to investigate his case, the Palmer Court presided over the dissolution of his marriage. In addition, the Juneau court sent him documents relating to a student loan matter. Wright also contacted the Alaska Department of Health and Social Services to obtain a death certificate.[2] A number of Alaska state agencies therefore had contact information for Wright while he was outside of the state.

In addition, "Wright worked at a number of nuclear facilities that required security clearances. To obtain these clearances, [he] provided his name, address, date

_____

[1] *Wright v. State,* 347 P.3d 1000, 1008 (Alaska App. 2015).

[2] *Id.* at 1004.

of birth, and social security number, along with copies of his drivers's license and social security card."[3] He made no attempt to conceal his identity.

I agree with the court that Investigator Josten "did what any reasonable officer would do under the circumstances."[4] But the superior court's focus on the single investigator's actions was misplaced. The Alaska State Troopers are a statewide agency, currently employing some 300 uniformed officers and 147 civilian employees.[5] There is no suggestion in the record that another officer was assigned after the first officer's reassignment. The failure to assign another trooper to continue the investigation after Josten's reassignment further demonstrates the State's negligence in searching for Wright, particularly given the quantity and seriousness of the allegations against him. In addition, the Palmer District Attorney's delay in charging Wright and its or the troopers' failure to obtain an extraditable warrant contribute to the State's responsibility for the pretrial delay.

I would therefore conclude that the superior court erred in holding Wright responsible for the *pre*-arrest delay. But I agree with the court of appeals' suggestion that the *post*-arrest delay is another matter altogether, and may well demonstrate that he had no interest in a speedy trial.

I would decide this case as did the court of appeals, and reverse and remand it to the superior court for further findings. I therefore respectfully dissent from this portion of the court's decision.

---

[3]     *Id.*

[4]     Opinion at 27-28 (quoting Appendix at 7).

[5]     *History of the Alaska State Troopers*, DEP'T OF PUB. SAFETY, ALASKA STATE TROOPERS, http://dps.alaska.gov/ast/history.aspx (last visited June 6, 2017).

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

STATE OF ALASKA, )
                               )
            Plaintiff, )
                               )
vs. )
                               )
SEAN WRIGHT, )
                               )
            Defendant. )
_____ )
Case No. 3AN-99-9876 CR

EXCERPT OF
ORDER RE MOTION TO DISMISS FOR PRETRIAL DELAY[*]

*****

II.     Discussion

***Wright has not made a showing of actual prejudice necessary to trigger the due process clause.***

The due process clauses of the United States and Alaska Constitutions protect the accused against unreasonable pre-accusation delay.[17]  The primary concern of the rule against pre-accusation delay is the impact of the delay on the accused's ability

---

[*]     This decision has been edited to conform to the technical rules of the Alaska Supreme Court, internal citations have been omitted, and typographical errors have been corrected.

[17]     *State v. Mouser*, 806 P.2d 330, 336 (Alaska App. 1991) (citing *United States v. Marion*, 404 U.S. 307, 324 (1971)).

to present a defense, not on the length of the delay itself.[18]  To prevail on such a claim, the accused must establish both the absence of a valid reason for the delay, and that the delay caused actual prejudice to the defendant.[19]  A showing of potential or possible prejudice will not suffice.

In considering a claim of unreasonable delay, the court must strike a balance weighing the reasonableness of the justification for delay against the degree of prejudice to the defendant.  The burden of proof is on the defendant to show the absence of a valid reason for the delay; however, once the issue is raised, the State has the burden of presenting sufficient reasons for such delay.[20]  When sufficient reasons are advanced by the State, the defendant must show the State's reasons do not justify the delay.[21]  The defendant also has the burden to prove actual prejudice.[22]

To establish actual prejudice, the defendant must present a "particularized showing that the unexcused delay was likely to have a specific and substantial adverse impact on the outcome of the case."[23]  At the very least, the accused must show that, but for the delay, he would have been able to present favorable evidence.  Mere speculation about the loss of favorable evidence is insufficient.  Absent a showing of specific adverse impact stemming from the delay, the requirement of prejudice is not met, and the

---

[18]     *Id*.; *see also Smith v. State*, No. A-6340, 1998 WL 191146, at *3 (Alaska App. Apr. 22, 1998).

[19]     *Mouser*, 806 P.2d at 336.

[20]     *Id*. (quoting *Alexander v. State*, 611 P.2d 469, 474 (Alaska 1980)).

[21]     *Id*.

[22]     *Id*.

[23]     *Id*. at 337.

balancing procedure is simply not triggered, even if there is no reason advanced by the State for the delay.[24]

In a recent decision, *State v. Gonzales*,[25] the Alaska Supreme Court reemphasized that the burden of proof rests with the defendant claiming unreasonable pre-indictment delay. In *Gonzales*, the defendant fled the state after being accused of sexually abusing the ten-year-old daughter of his girlfriend in 1992. Gonzales resurfaced in Alaska ten years later, at which point Anchorage police resumed the investigation. Gonzales was arrested after a search of Gonzales's home revealed thousands of images of child pornography.[26] Gonzales was then indicted on various counts of sexual abuse of a minor stemming from the 1992 allegations.

Gonzales moved the superior court to dismiss the charges against him arguing unreasonable pre-indictment delay. The superior court granted the motion on the basis that the State failed to put forth any good reason for the delay.[27] The Court of Appeals affirmed the superior court finding that "the State presented no evidence justifying the delay."[28]

The Alaska Supreme Court reversed the decision of the two lower courts and remanded the case back to the superior court, concluding that the lower courts did

---

[24] *Id*. at 338. The *Mouser* court held that anxiety of the accused, and possible memory loss to the defendant and witnesses do not act as a showing of actual prejudice.

[25] *State v. Gonzales*, 156 P.3d 407 (Alaska 2007). Gonzales's departure and absence from the state is quite analogous to Wright's departure and absence in this case.

[26] *Id*. at 410.

[27] *Id*.

[28] *Id*. (quoting *State v. Gonzales*, 121 P.3d 822, 826 (Alaska App. 2005)).

not properly assign the burden of proof to the defendant.[29]  In reaching this conclusion, the Supreme Court found that the lower courts erred in finding that the ten-year pre-indictment delay was unreasonable.[30]  The Court held that "because the delay here was caused largely by the actions of the defendant, the ten-year delay was nonetheless reasonable."[31]

The same holds true in Wright's case.  Wright voluntarily left the state once he realized he was under investigation for alleged sexual abuse of a minor.  Wright moved from state to state and job to job until authorities found him in Minnesota.  Wright was promptly extradited once located.  The delay in indicting Wright was largely attributable to his flight from the state and his frequent moves to different states to obtain employment.  As such, the length of the delay is not unreasonable.  Moreover, Wright has advanced no evidence of actual prejudice caused by the State's delay in arresting him and bringing him before the court.[32]  Without meeting his burden of showing actual prejudice, Wright is not entitled to relief under the due process clause.

### *Wright is not entitled to relief under the speedy trial clause.*

The Sixth Amendment of the United States Constitution, as well as Art. I, section 11 of the Alaska Constitution, guarantee an accused the right to a speedy trial. Courts have identified three objectives of the speedy trial guarantee: (1) to prevent harming the defendant by a weakening of his case as evidence and memories grow stale

---

[29]     *Id*. at 411-12.

[30]     *Id*. at 412-14.

[31]     *Id*. at 414.

[32]     Wright's assertion that he has lost the defense of "planted memory," asserted for the first time in his post-hearing briefing, is purely speculative.  The court sees no reason why that defense cannot now still be asserted.

with the passage of time; (2) to prevent prolonged pre-trial incarceration; and (3) to limit the infliction of anxiety upon the accused because of longstanding charges.[33]  For this reason, a showing of actual prejudice is not a prerequisite to relief under the speedy trial clause; a showing of possible prejudice may suffice.[34]

To determine whether a defendant has been denied the right to speedy trial, courts must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant.[35]  The accused must show that the length of the delay is presumptively prejudicial, or alternatively, that he was actually prejudiced to invoke the above test.  When a delay is extensive, prejudice may be presumed.  Alaska courts have considered a delay of over fourteen months presumptively prejudicial.  The right to a speedy trial attaches when the defendant becomes formally accused.[36]  In calculating the period of delay, any delay caused by the defendant is excluded.[37]

The delay of five years in Wright's case is of sufficient duration to be presumptively prejudicial; however, this delay does not invariably violate Wright's right to speedy trial.  Instead, prejudicial delay only triggers the four-part balancing test articulated in *Mouser*.  When using the balancing test, the court must determine precisely

---

[33]     *State v. Mouser*, 806 P.2d 330, 338 (Alaska App. 1991) (citing *Rutherford v. State*, 486 P.2d 946, 947 (Alaska 1971)).

[34]     *Id*. (citing *Moore v. Arizona*, 414 U.S. 25, 26-27 (1973)).

[35]     *Smith v. State* , No. A-6340, 1998 WL 191146, at *2 (Alaska App. Apr. 22, 1998) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)); *Mouser*, 806 P.2d at 340.

[36]     *Yarbor v. State*, 546 P.2d 564, 567 (Alaska 1976).

[37]     *Springer v. State*, 666 P.2d 431, 435 (Alaska App. 1983).

how heavily any lack of diligence should weigh against the state.[38] Deliberate attempts to delay trial in order to impede defense should weigh heavily against the State, while more neutral reasons, such as negligence, should be weighed less heavily. Valid reasons, such as missing witness[es], should serve to justify appropriate delay.[39]

In the present case, it is clear that the five year delay is presumptively prejudicial. The court finds that part of the reason for the delay is the State's negligence in failing to issue an extraditable warrant for Wright's arrest. Had such a warrant been issued, the State would likely have located Wright when he applied for work at the nuclear facilities in Arkansas in 2000 which required security clearance. But Wright's departure from the state during the investigation, and after the warrant was issued for his arrest, made it impossible to comply with the right to speedy trial.[40] Wright had no less than sixteen different jobs in different states and locations during his absence. Between jobs he would be in Arkansas part of the time. With a few exceptions, Wright generally stayed at one location for only a few months.[41] Due diligence only requires that the State make reasonable efforts to find a defendant whose whereabouts were unknown and bring

---

[38] *Mouser*, 806 P.2d at 341.

[39] *Id*.

[40] As mentioned, the defendant's causes for delay do not count towards determining speedy trial violation.

[41] Wright worked at the Pine Bluff Arsenal nuclear facility for one year beginning in 1999, and at the Sequoyah Nuclear Plant in Tennessee for eight months in 2003. Other than a six-month job at Arkansas Nuclear One in Arkansas in 2000, Wright's periods of employment were brief.

him to trial.**⁴²**  The court finds Investigator Josten's attempts to locate Wright throughout his absence from the State were reasonable.

Wright's argument that Josten could have located Wright by checking Palmer court records, Juneau court records, and Vital Statistics files places an unreasonable burden on law enforcement.  By the time an arrest warrant was issued for Wright in September 1999, Josten was off the case and assigned different duties.  She did what any reasonable officer would do under the circumstances and that is to periodically check with various police sources to see if Wright had surfaced.  A more thorough investigation of a defendant's whereabouts cannot be expected of a police officer no longer having responsibility for the case.

Wright's argument that Josten knew (or should have known) that Wright was at his brother's residence shortly after he left Alaska also misses the mark.  Josten had no arrest warrant for Wright at the time, was not certain he was at his brother's because of phone calls to Evelyn from different numbers, and was declined an extraditable arrest warrant when she requested it.  Contacting Wright at his brother's without an extraditable warrant would have only alerted Wright that police were searching for him.

Despite knowing of the investigation against him, Wright never asserted his right to speedy trial.  In *Mouser*, the Court of Appeals noted that the defendant presented no evidence indicating that he made any effort to inquire into the status of his case during the period of delay, nor did he advance an explanation for the apparent lack of inquiry.**⁴³**  Here, it is equally clear that Wright did not inquire into the status of his case at any time.

---

**⁴²**    *Odekirk v. State*, 648 P.2d 1039, 1043 (Alaska App. 1982).

**⁴³**    *Mouser*, 802 P.2d at 342.

While memories may have faded in Wright's case, witness statements from the police investigation remain intact. Wright has not asserted that witnesses important to his defense cannot now be located or cannot now recall events. Wright has not been incarcerated during the delay in bringing him to trial. Balancing all these factors, the court concludes that Wright's speedy trial rights have not been violated.

For the foregoing reasons, Wright's Motion to Dismiss is DENIED.[44]

DATED at Anchorage, Alaska this 8th day of May, 2007.

_____/s/_____

Philip R. Volland
Superior Court Judge

---

[44] Wright's Motion to Dismiss the Special Findings to the Indictment is DENIED AS MOOT in light of *State v. Dague*, 143 P.3d 988 (Alaska App. 2006).